# HENRY OLDEWURTEL *vs.* BERNARD WIESENFELD
## ET AL., EXECUTORS.

*Landlord and Tenant—Parol Agreement Varying Lease Under Seal— Right of Landlord to Re-Let Premises Vacated by Tenant Before Expiration of Term—Surrender of Premises Not Accepted by Landlord.*

After the execution of a lease under seal for a term of years, the lessor agreed by parol that the rent should be reduced for the period of six months.   The lessee subsequently paid the rent as reserved in the original lease.   In an action of covenant to recover the rent thereafter accruing, *held,* that there had been no such waiver or alteration of the original lease as to defeat the lessor's right to sue in covenant.

Before the expiration of his term a tenant left the premises and sent the keys to the landlord.   The tenant was notified that the landlord, without abandoning any right, would rent the property, crediting the tenant with any rent collected and holding him liable for any balance due under the lease.   The landlord then took possession of the property, made certain repairs and rented it from time to time.   In an action to recover the balance of the rent due under the lease less the sums received from other parties, *held,* that the reletting of the property, although without the tenant's assent, was not the acceptance of a surrender of the term, or an ouster of the tenant, and that the latter is liable for the rent under the covenants of the lease.

A surrender of the demised premises by a tenant before the expiration of

the term does not relieve him from liability for rent unless the surrender is accepted by the landlord.

Appeal from the Court of Common Pleas (DENNIS, J.)

The cause was argued before FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Hugo Steiner* and *Lewis Putzel,* for the appellant.

It appears from the declaration in this case that the specialty sued on was varied by a subsequent parol agreement. When a specialty is varied in some point essential to the defendant's liability, the entire agreement becomes parol and covenant is not the proper form of action. 5 *Enc. Pl. & Pr.*, 351; 1 *Chitty Pleading*, 118, 134. "There can be no doubt that where the contract contained in a deed has been varied or substituted by subsequent acts and agreements of the parties, the remedies originally arising out of the deed may be varied in conformity with them. An action upon the deed would not be *permitted*, because the rights and obligations of the parties to the suit would depend upon a state of things by which the deed has been put aside." *Fresh* v. *Gilson*, 16 Pet. 334.

An alteration of a specialty by parol makes the whole contract parol; covenant cannot be maintained upon it; the terms of the specialty are in effect adopted and become a part of the parol agreement. *Carrier* v. *Gilworth*, 59 Pa. St. 406; *Lehigh Coal Co.* v. *Harlan*, 27 Pa. St. 429; *Peyton* v. *Harman*, 22 Gratt. 643; *Libbey* v. *Brown*, 4 Pick. 136. If a plaintiff bring his suit in covenant he will not be permitted to aver that the time of the performance was enlarged. He must adhere strictly to the terms of the written contract, otherwise his declaration will be held bad on demurrer. *Watchman* v. *Crook*, 5 G. & J. 239. In an action upon a sealed contract, recovery can only be had upon the instrument in accordance with the terms and stipulations therein contained. *O'Brien* v. *Fowler*, 67 Md. 561.

In the case at bar the bill of particulars clearly shows that

the specialty was altered by the reduction of the rent reserved therein for the months of August, September, October, November and December, 1897, and January, 1898.   This alteration is one which materially affected the liability of the defendant.   Nor does it matter what words are used to indicate that alteration, whether " ten dollars per month waived " as in the bill of particulars, or " less ten dollars per month as per agreement," as in the account filed with the declaration. A waiver is an agreement to dispense with something to which the plaintiff is entitled, it is the relinquishment of a right.   28 *Ency. Law* (1 ed.), 526, and is presumed in law to be legal and valid as far as the plaintiff is concerned when alleged by him in his declaration.

Another parol alteration of the specialty is shown in the credits given in the bill of particulars.   There, Hughes & Co., Wheeler & Hughes and C. Walmacher appear as having made payments on account of a contract to which they are utter strangers.   How and by what right they were made parties does not appear from the pleadings ; the only conclusion to be drawn is that, by some agreement, not under seal, they were permitted to become parties to the transaction and to make payments.   But, this again is an alteration of the specialty which becomes essential to the defendant's liability under the contract.   The specialty having thus been altered by parol agreements in two essentials, the suit should have been brought in assumpsit and not in covenant, and the Court below should have sustained the demurrer.

If liable at all, the defendant is only liable for the rent that accrued during the time the premises were vacant, and his liability ceased from the moment a new tenant was placed in possession of them *without his consent.*   " It is not inconsistent with the continued possession of an empty house by the tenant that the landlord puts in a caretaker or enters merely for the purpose of making repairs or puts up bills for the purpose of reletting the premises *if they are not in fact relet thereby*." *Redmond & Lyons, Landlord and Tenant,* 352, 353; 18 *Encycl.* (2nd ed.), 305; *Nonotuck Silk Co.* v. *Shay,* 37 Ill. App. 543; *Livermore* v. *Eddy,* 33 Mo. 547.

The reletting of premises by the landlond during the continuance of the lease, and the acceptance of rent by him constitutes a surrender. *Kinsey* v. *Minnick*, 43 Md. 112; *Bealer* v. *White*, 94 U. S. 382.

Under the common law a landlord could not re-enter abandoned premises on which there was a subsisting lease until a special statute was enacted to enable him to do so. 11 *Geo. II*, Ch. 19, sec. 16; *Alex. Brit. Stat.*, 739. Reletting by the landlord is an eviction which discharges the tenant's liability even where premises have been abandoned. 11 *Encycl.* (2nd ed.), 469; 18 *Encycl.* (2nd ed.), 305; *Rice* v. *Dudley*, 65 Ala. 68; *Day* v. *Watson*, 8 Mich. 535; *Smith* v. *Wise*, 58 Ill. 141; *Graham* v. *Anderson*, 3 Harr. (Del.) 364; *Miller* v. *Michel*, 13 Ind. App. 190; *Nonotuck Silk Co.* v. *Shay*, 37 Ill. App. 542.

In *Rice* v. *Dudley*, 65 Ala. 68, the Court said: "Where a tenant abandoned the premises leased before the expiration of the term, the landlord is at liberty to pursue either of two courses. He may suffer the premises to remain vacant and sue on the contract of renting, or he may enter and determine the contract, claiming the rent up to the date of the abandonment. The landlord cannot take possession of the premises and insist at the same time that the contract of renting is in force, *without the consent express or implied of the tenant*. It is always implied, in the absence of a stipulation to the contrary, that the tenant shall have the uninterrupted occupancy and use of the whole of the premises." In *Day* v. *Watson*, 8 Mich. 535, the Court said: "There is no proof in this case from which an inference could be legitimately drawn that the entry of the defendant in error was by consent of her tenants, or under any arrangement with them. This being so, and the entry being followed by a continuous possession which was inconsistent with the possessory title insured to the tenants under the lease, their possession amounts very clearly to an eviction." This same doctrine has been announced in *Biggs* v. *Stueler*, 93 Md. 100.

An assent is therefore absolutely necessary. This can be implied or expressed. It certainly was not expressed in this

case.   The letter of June 3rd was never answered and no in-
ference of acquiescence as to the proposition therein contained
can be drawn from the defendant's failure to reply.   The let-
ter did not have the same force and effect as a verbal state-
ment made in the presence of the defendant.   *Biggs* v. *Stue-
ler*, *supra; Learned* v. *Tilston*, 97 N. Y. 12; *Underhill* v. *Col-
lins*, 132 N. Y. 269.   In *Gray* v. *Kaufman*, 162 N. Y. 388,
in which the facts are very similar to those of the case at bar,
the Court said: "This controversy arises out of conventional
relation of landlord and tenant under circumstances governed
by fixed principles of law.   The first and most important
question in the case is, whether the plaintiffs' reletting of the
premises described in the lease, after the defendant's attempted
surrender of the same, changed or affected the legal status of the
parties under the original lease.   It is so well settled as to be
almost axiomatic that a surrender of premises is created by
operation of law when the parties do an act so inconsistent
with the subsisting relation of landlord and tenant as to imply
that they have both agreed to consider the surrender as made.
It is conceded that the defendant's offer to surrender was de-
clined by the plaintiff, and that after the defendant's abandon-
ment of the premises the plaintiff relet them in his own name.
Such a situation unqualified by other conditions would create
a surrender by operation of law."

*Vernon Cook* (with whom were *Gans & Haman* on the
brief), for the appellees.

An acceptance of a surrender is a question of intention.
It can only be inferred from acts, in so far as such acts are
evidences of intention.   When the letters of June 2nd and 3rd
are read in connection with these acts, such acts are clearly
seen to result, not from an intention to accept a surrender, but
from an intention to hold the tenant liable for the remainder
of his term.

The appellant argues, however, that the landlord has no
right to commit such acts and still hold the tenant for his rent;
that the two positions are inconsistent.   Let us see where this

rule, if correct, will lead us.     If a tenant moves out of leased premises and repudiates his liability for the rent without just cause, the landlord must, on the appellant's theory, stand idly by, allowing the premises to remain vacant, sometimes in disrepair, perhaps even going to ruin, and dare not, on peril of releasing the tenant, do those acts which are necessary to mitigate the damages caused by the tenant's breach of his contract.

Such a rule would be most unreasonable and contrary to elementary legal principles.     It is text-book law that upon a breach of any contract the party wronged must do everything reasonably possible to lessen the damages flowing from such breach.     No reason has been suggested why this rule should not apply to the relation of landlord and tenant.·     All the best considered authorities are to the ·effect that where the tenant has wrongfully repudiated his liability under the lease, that the landlord has a right to re-enter and ·relet the premises, and that such· acts do· not release the tenant.     The exact point is passed upon in each of the following cases: *Auer* v. *Penn*; 99 Pa. St. 370; *In re Orne*, 15 Phila. 489; *Brenckmann* v. *Twibill*, 8 Norris, 58; *Bloomer* v. *Merrill*, 1 Daly, 485; *Meyer* v. *Smith*, 33 Ark. 627; *Marseilles* v. *Karr*, 6 Wharton, 500; *Buck* v. *Lewis*, 46 Mo. App. 227; *Miller* v. *Benton*; 55 Conn. 529; *Bowen* v. *Clarke*, 22 Oreg.· 566; *Rice* v. *Gibbs*, 33 Neb. 460; *Winant* v. *Hines*, 14 Daly, 187; *Scheelky* v. *Koch*, 119 N. Car. 80; *Gaines* v. *McAdam*, 79 Ill. App. 201; *Resser* v. *Corwin*, 72 Ill. App. 625; *Rich* v. *Doyenn*; 85 Hun. 510; *Alsup* v. *Banks*, 68 Miss. 664; *Underhill* v. *Collins*, 132 N. Y. 269; *Scott* v. *Beecher*, 91 Mich. 590.

There is nothing in *Biggs* v. *Stueler*, 93 Md. 100, in conflict with this rule.

It may be suggested by the appellant, though it was not urged at the trial below, that the facts that the landlords gave notice that they intended to make considerable· repairs to the property, and that those repairs would cause the tenant more or less inconvenience, amounted to an ouster or eviction.

There are several answers to this suggestion: (1) As a

matter of law the acts of a landlord in entering demised prem-
ises for the purpose of making necessary repairs, or even re-
building, being for the ultimate benefit of the tenant, is not
considered an ouster.     11 *Ency. Law*, 2nd ed., 477.  See also
*Wood on Landlord and Tenant*, 892, note 6.   Especially does
the landlord have a right to re-enter to make repairs ordered
by municipal authorities.   *White* v. *Thurber*, 55 Hun. 447;
*Fleming* v. *King*, 100 Ga. 449.   (2) The repairs in this case
were to be made at the actual request of the tenant.  His own
testimony shows that he requested Mr. Miller to have repairs
made.   (3) The repairs were not actually begun until after
Mr. Oldewurtel had vacated the premises and repudiated his
lease.

The appellant's theory is that subsequent to the lease, which
was under seal, and before any breach thereof, the parties, by
a legally binding verbal contract, arranged for a reduction of
rent to the extent of $10 a month for six months.   It is then
urged that this verbal agreement supplanted and took the
place of the original lease so that the same no longer had any
legal existence, and that therefore no suit can be maintained
thereon.

There are several answers to this contention.   (1) As a
matter of law it is not possible to vary a contract under seal,
before breach, by a subsequent verbal agreement.   *Zihlman*
v. *Cumberland Glass Co.*, 74 Md. 303, 310; *Herzog* v. *Sawyer*,
61 Md. 344.   (2) Even if the alleged verbal arrangement did
amount to a binding contract, it continued in force for six
months only.   At the end of that time the original lease was
revived with all its terms and conditions.   This is practically
admitted by both parties ; after the expiration of the six
months Mr. Oldewurtel was charged with, and paid without
protest the full rental reserved in the lease, and this without
any new agreement.   Even, therefore, if the lease be treated
as abrogated, it continued so for six months only.   (3) There
was no binding agreement between the parties as to the abate-
ment of rent.   Mr. Wiesenfeld shows in his testimony that it
was wholly gratuitous, and the appellant has not and cannot
show any consideration for it.

Briscoe, J., delivered the opinion of the Court.

On the eighth day of June, 1900, the appellees instituted a suit in covenant in the Superior Court of Baltimore City, against the appellant, to recover rent due and owing under a lease dated the 1st day of April, 1895, for a store and dwelling known as No. 507 South Broadway, Baltimore. The lease is in writing and is fully set out in the record. The property was rented for the term of five years, beginning on the first day of April, 1895, and ending on the 31st day of March, 1900, at $900 a year, payable in equal monthly instalments on the first day of each and every month. It was provided by the terms of the lease that its provisions and covenants should continue in force from term to term after the expiration of the term mentioned therein, provided the parties thereto or either of them could terminate it at the end of the term, or of any year thereafter, by giving at least ninety days previous notice thereof in writing. It was further provided, in case the rent should be ten days in arrear and not paid when the same should become due, then the lessor may re-enter and take back the premises without demand. There was no covenant in the lease for making repairs to the premises.

The declaration states that the sum of six hundred and five dollars was due and unpaid for rent with interest from April 1st, 1900, over and above all discounts, according to the following bill of particulars, which was filed, on demand, in the case.

BILL OF PARTICULARS.

Mr. Henry Oldewurtel to Bernard Wiesenfeld and Joseph Miller, trustees of the estate of Betsey Wiesenfeld.

| | |
|---|---|
| To 5 years rent of No. 507 S. Broadway, at $900 per year, as per lease of April 1st, 1895............................................................$4,500 | 00 |
| Less $10 per month, waived for the months of Aug., Sept., October, November and Dec., 1897, and Jan'y, 1898, respectively................................................................................ 60 | 00 |
| $4,440 | 00 |

CREDITS.

| | |
|---|---|
| By cash from April 1st, 1895, to June 1st, 1898.........................$2,865 | 00 |
| " Hughes & Co., from Sept. 1st, 1898, to Jany. 1st, 1899......... 280 | 00 |
| " Wheeler & Hughes, from Feb. 1st, 1899, to Aug. 1st, 1899 .. 370 | 00 |
| " C. Walmacher, from Oct. 19th, 1899, to Mar. 31st, 1900....... 320 | 00 |
| $3,835 | 00 |
| To balance................................................................................ 605 | 00 |

The declaration was in covenant, and the lease, which was in writing under seal, was filed with the declaration. To the declaration as thus filed, the defendant interposed a demurrer upon the ground that the lease sued on had been varied by a subsequent parol agreement and the suit should have been in *assumpsit* and not in covenant. The action of the Court on overruling the demurrer presents the first question for our consideration. We find no error in the Court's ruling upon the demurrer. There was no such subsequent parol agreement between the parties in this case, as varied the original lease, and prevented a suit in covenant thereon. The mere credit or reduction of the rent for six months to the extent of $10 a month, when the defendant, at the end of the six months paid the rental reserved in the lease, and continued in possession according to the terms of the lease, without a new ageement, can hardly be held to be such a waiver, alteration or abandonment of the lease as to defeat the action in this case. *Herzog* v. *Sawyer*, 61 Md. 344; *Bodey* v. *Cooper*, 82 Md. 631; *Zihlman* v. *Cumberland Glass Co.*, 74 Md. 310.

The case of *O'Brien* v. *Fowler, et al.*, 67 Md. 565, relied upon by the appellant is unlike this. In that case the plaintiff brought an action of covenant against the defendant, and in the fifth count of the declaration sought to recover for extra work and materials furnished which were not embraced in the written contract. The contract stipulated that no extra work would be allowed, unless the same should be performed through a written order, signed by the engineer and approved by the examiners. The written orders as required by the contract were waived by the defendant for the extra work and the Court held upon demurrer that while the plaintiff could not recover for the extra work on the original contract under seal, he might recover in an action of *assumpsit* for the value of the extra work. In the case here, the plaintiff seeks to recover for rent due under the contract, less a gratuitous abatement in rent of ten dollars for six months, before a breach of the contract, under seal, and other credits, as given. The other questions raised on the record, arise upon exceptions to the rulings of

the Court upon the prayers, and to the admissibility of evidence.

The undisputed facts of the case out of which the controversy arose briefly stated are these: The defendant, the lessee, continued in possession of the demised premises until June 1st, 1898, when he paid the rent to that date and left the key at the office of the plaintiff in his absence, stating to the clerk "that he had moved out the house and here was the key."

On June 2nd, the next day, the plaintiff wrote him the following letter:

"Henry Oldewurtel, Esq.,

*Dear Sir :—*I have been informed that you left the key of No. 507 South Broadway at my office. I beg to notify you that I refuse to accept the key and that it is still at my office at your risk and disposal. I also hereby notify you that we will hold you subject to all the covenants of the lease, executed by you.

Very truly yours,

Bernard Wiesenfeld."

The plaintiff not receiving a reply to the foregoing letter, a second letter dated June 3rd, 1898, was written the defendant as follows:

"Henry Oldewurtel, Esq.,

*Dear Sir :—*I herein beg to notify you that I intend to make an effort to get a tenant for the premises known as No. 507 South Broadway, without abandoning any rights, Mr. Miller and myself as executors and trustees may have against you as tenant under our lease to you for rent. In case we get a tenant we will allow you credit for such rent as we may collect, and hold you for the balance as due under your lease.

Yours truly,                                   •

Bernard Wiesenfeld."

Subsequently a sign was put in the window of the premises that the property was for rent, and it was rented from time to time, and the defendant credited with the rent to the date of the expiration of the lease. The plaintiffs testified that they refused to accept a surrender of the premises, never made any alteration of the original lease, by a subsequent agreement, and never ousted the defendant from the premises, and that

necessary repairs were made to the property. The defendant, on the other hand, testified that he vacated the property because it had been condemned by the building inspector of Baltimore, and was not tenantable, and he notified the clerk when he paid the rent that he would no longer be liable under the lease. There was other evidence in the case, but as the material facts are not disputed and have been heretofore stated it will not be necessary to further set them out. At the trial below, the Court granted the two prayers offered on the part of the plaintiff, and rejected those presented by the defendant, except the fifth. It also granted the plaintiff's special exception to the defendant's first prayer, that there was no legally sufficient evidence to show that the terms of the lease were ever modified by any legally binding agreement. The whole case was presented on the prayers and the special exception, and we shall proceed to consider them.

The prayers on the part of the plaintiff were demurrers to the evidence and were to the effect that as a matter of law there was no legally sufficient evidence of the acceptance of a surrender, or of an ouster by the plaintiff.

The general rule is well settled that to constitute a valid surrender of rented premises by a tenant during the term there must be the assent of both parties to the rescinding of the contract of renting, and such assent may be expressed or implied from such acts as would reasonably indicate that the parties have agreed that the tenant shall abandon the premises, and the landlord assume its possession. *Biggs* v. *Stueler*, 93 Md. 110.

The appellants admit that the defendant returned the key before the expiration of the lease. It was not accepted and therefore up to this time no surrender took place. It is further conceded that the plaintiffs had a right to enter for the purpose of taking care of the property, of repairing the premises and to put a "for rent sign" in the window.

But it is earnestly urged that the re-renting of the property for the benefit of the tenant without his assent was an acceptance of a surrender, an ouster of the tenant, and released him from liability for rent under the lease.

There are some authorities to the effect that a re-entry and reletting of abandoned premises by the landlord without the consent of the tenant, would create a surrender, by operation of law. *Underhill* v. *Collins*, 132 N. Y. 271; *Gray* v. *Kaufman*, 162 N. Y. 388; *Day* v. *Watson*, 8 Mich. 535; *Rice* v. *Dudley*, 65 Ala. 68.

The best approved cases, however, assert the contrary doctrine, and hold that where a tenant repudiates the lease, and abandons the demised premises, and the lessor enters and relets the property, that such re-renting does not relieve the tenant from the payment of the rent under the covenants of the lease. *Auer* v. *Penn.* 99 Pa. St. 370; *Meyer* v. *Smith*, 33 Ark. 627; *Bloomer* v. *Merrill*, 1 Daly, 485; *Scott* v. *Beecher*, 91 Mich. 590; *Rich* v. *Doyenn*, 85 Hun. 510; *Alsup* v. *Banks*, 68 Miss. 664.

In *Biggs* v. *Stueler*, 93 Md. 111, this Court said: "The acts upon which the appellee in this case relies to prove a surrender are the acceptance of the keys by the appellee, the repairs to the house and the reletting. But those are insufficient of themselves to show acceptance, unless under all the circumstances they are of such a character as to show a purpose on the part of the tenant to vacate and on the part of the landlord to resume possession, to the exclusion of the tenant."

In the case now under consideration all of the acts of the lessor, including the letters of June 2nd and 3rd clearly show that the appellees did not intend to accept a surrender of the property and to release the tenant from his liability for rent. On the contrary the letters distinctly state the property would be rented subject to the covenants of the lease and if a tenant could be secured, and rent collected, the lessee would be credited therewith, and be liable for the difference.

The case of *Biggs* v. *Stueler*, *supra*, is also relied upon by the appellant to sustain the proposition urged by him, that the assent of the tenant is absolutely necessary before the landlord can relet demised premises. In that case there was a statement that would seem to sustain the appellant's contention but an examination of the whole case, will clearly show

that the case cannot be given such a construction. It was not necessary for the decision of the case, and would not be in accord with the conclusion reached by the Court, under the facts of the case.

As to the rulings of the Court on the first and second exceptions upon the admissibility of evidence but little need be said as the evidence was afterwards admitted, and the defendant was not injured thereby.

The plaintiff's special exception to the defendant's first prayer was properly sustained. There was no evidence legally sufficient to show that the terms of the lease had been modified by an oral agreement, and what was said by us on the demurrer to the declaration, disposes of this question.

For the reason we have given, the defendant's prayers were properly rejected, and as the correctness of the Court's rulings on the plaintiff's prayers established the right of the plaintiffs to recover, the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided April 2nd, 1903.)