E. L. HICKMAN, Appellant, v. J. BREADFORD et al.,
Appellees.

**LANDLORD AND TENANT:** Rent—Abandonment by Tenant—Re-
1  entry and Re-leasing by Landlord—Effect. A landlord who, *for
the benefit of the tenant and to avoid loss,* re-enters and re-

leases premises abandoned by the tenant prior to the expiration of the lease, does not, even in the absence of notice to the tenant of the purpose of such re-entry, etc., thereby, and by operation of law, release the tenant from the obligation to pay future accruing rent. In other words, a re-entry and re-leasing, under such circumstances, does not work, by operation of law, an *acceptance* of the tenant's abandonment.

**LANDLORD AND TENANT: Rent—Abandonment by Tenant—Expense Attending Re-leasing.** A landlord who re-enters premises abandoned by the tenant prior to the expiration of the lease, and, for the benefit of the tenant and to avoid loss, re-leases, *with attendant necessary expense for non-permanent repairs to the premises,* is entitled, in an action against the abandoning tenant, to credit for such expense.

*Appeal from Lucas District Court.—C. W. VERMILION, Judge.*

WEDNESDAY, APRIL 4, 1917.

ACTION to recover rent and enforce a landlord's lien. Judgment for the plaintiff in the district court for part of the amount claimed. Opinion states the facts.—*Reversed and Remanded.*

*Hickman & Wells,* for appellant.

*William Collinson,* for appellees.

GAYNOR, C. J.—This case is submitted upon stipulated facts, from which it appears that, on the 6th day of July, 1914, the plaintiff leased to the defendant Breadford a certain brick store building for a term of 5 years, commencing on the 1st day of September, 1914; that defendant took possession under the lease and continued to occupy the same up to the 1st day of July, 1915, and paid all the rent accruing up to that date; that the rental agreed to be paid in the lease was $60 a month, payable on the first day of each month.

On the 1st day of July, 1915, the defendant made a general assignment to the other defendant, William Collin-

son, for the benefit of all his creditors. Thereupon, the plaintiff commenced an action to recover the rental due for the month of July, and caused a landlord's writ of attachment to issue and the property of the defendant to be levied upon. By order of the court, the property so levied upon was sold, and the proceeds ordered to be held by the sheriff, subject to the further order of the court. Subsequently, plaintiff amended his petition, alleging that the rents for the months of August, September and October had become due, and asking judgment against the defendant for the rent accruing for these months, to wit, the sum of $240. Thereupon the parties entered into written stipulation reciting the above facts, and further stipulating that afterwards, for the benefit of the defendant and to avoid loss, plaintiff endeavored to rent said leased building, and, by making certain alterations and repairs, succeeded in leasing the same to one H. C. Milligan for a period of one year from the 1st day of September, 1915, at a monthly rental of $60; that said new tenant had paid the plaintiff the sum of $120 rent for the months of September and October, 1915, out of which the plaintiff has paid the expense of such alterations and repairs as follows:

For material and labor in putting in new glass in front windows and building partition in store room, said glass having been broken by defendant during his occupancy, and the partition being necessary in order to rent said room after default of defendant, in the sum of ...........$ 46.75

For lumber and material for partition and front.. 15.51

For painting, decorating and preparing walls in said room ....................................... 19.20

For paint and varnish used ...................... 8.75

For carpenter work, changing show windows, ..... 8.64

Total ..................................  ......$ 98.85

This amount, deducted from the two months' rent received from Milligan, leaves a balance of $21.15 to be credited to the defendant upon the amount claimed to be due for rent for the months of July, August, September and October, leaving a balance of $218.85, claimed by the plaintiff to be due.

Upon this stipulation of facts, the cause was submitted to the court, and the court entered judgment for plaintiff for $120, and an order was made that the same be paid out of the proceeds of the attached property in the hands of the sheriff. From this judgment, the plaintiff appeals, and alleges that the court erred in holding that there was a surrender of the leased property to the plaintiff, and such surrender accepted by the plaintiff on the 1st day of September, 1915. Or, if the court did not so hold, then the court erred in holding that the plaintiff was not entitled to deduct from the amount of rent received from Milligan the amount which was necessarily paid by the plaintiff in preparing the room for the use of Milligan, under the stipulation. We are not favored with an argument from the appellees in this case. The record does not disclose on which theory the court held that the plaintiff was entitled to recover only $120. Either theory adopted by the court would result in the same way. If the court held that the act of the plaintiff in taking possession of the room, repairing it and renting it to Milligan, constituted in law a surrender and acceptance of the lease, thereby terminating the lease, then, of course, the plaintiff could only recover up to that time, or for the months of July and August, and the judgment would be right on this theory, provided that the stipulation, when properly considered, shows a surrender and acceptance sufficient to terminate the lease on the 1st day of September, 1915.

If, however, the court held that there was not a surrender and acceptance of the lease by the plaintiff, but that the

plaintiff took possession for the use and benefit of his ten-
ant, the defendant, and rented it for the use and benefit of
his tenant, not surrendering or intending to surrender any
of his rights under the lease, then the defendant would be
liable to the plaintiff for the full amount of the accrued
rent, less such sum as the plaintiff received from his new
tenant. The new tenant paid the same rental for Septem-
ber and October that the defendant agreed to pay. There-
fore, the plaintiff, having received the rental for September
and October, could recover of the defendant the $240—the
stipulated rent in the original lease—less the $120 re-
ceived by him from the new tenant. This would bring the
result reached by the court.

If, however, plaintiff was entitled to deduct from the
amount received from his new tenant, the $98.85 which he
paid out to secure this new tenant, in the way of altera-
tions and repairs to meet the needs of the new tenant, then
there would be left but $21.15 of the sum received from the
new tenant, to be credited to the defendant for rental for
July, August, September and October, leaving a balance of
$218.85 due plaintiff.

The first question that presents itself is: Does the stip-
ulation show a surrender by the tenant and an acceptance
by the plaintiff such as terminates the lease? After care-
ful research, we find but two cases in this state bearing
upon this question: *Martin v. Stearns,* 52 Iowa 345, and
*Brown v. Cairns,* 107 Iowa 727. In this last case, it was
said, in substance: The defendants pleaded that they no-
tified the plaintiffs of their intention to *surrender* posses-
sion, and that they did surrender possession; that plaintiffs
*accepted the surrender* by entering into another contract of
lease with a third party by which they leased the whole
premises for the term of one year; that the new tenant
entered into possession and occupied the same. It was fur-
ther alleged that, by reason of the acceptance of the sur-

render, and by plaintiffs' entering into said contract of lease, defendants had now no longer any estate in the lands and are discharged from the payment of rent; and it was further alleged that plaintiffs were estopped from recovering for the rent accruing after the surrender. To this part of the answer, plaintiffs demurred, for the reason that it appeared that the re-renting of the land was after the commencement of the suit, and constituted no defense to plaintiffs' action. The demurrer was overruled, and error was assigned upon the ruling. This court said:

"Manifestly, the answer sets forth a surrender, both by agreement and by operation of law."

The court, in passing upon this controversy, said:

"Appellants (plaintiffs) rely upon the case of *Martin v. Stearns*, 52 Iowa 345. In that case, the fact that the plaintiff, at the time of the alleged surrender, had brought his action to secure the payment of rent yet to accrue, was held of controlling importance in solving the question as to whether or not there had been a mutual agreement of surrender. * * * The sole question decided was one of fact, and it was held there was no mutual agreement. The question here is one of pleading, and we think the answer sets forth facts which, if unexplained, would amount not only to a surrender by agreement of the parties but also to a surrender by operation of law. Surrender by agreement of the parties is well defined in the *Martin* case. It is there said to be 'a yielding up of an estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties.' It is further said that this agreement may be implied from the acts and conduct of the parties. Surrender by operation of law is said to exist when the owner of a particular estate has been a party to some act having some other object than that of a surrender, but which object cannot be effected while the particular estate continues, and the validity of which act he is

by law estopped from disputing. Such surrender is said to be the act of the law, and takes place independently of, and even in spite of, the intention of the parties."

The demurrer being overruled, the plaintiffs replied to the answer above set forth; admitted that they received notice from the defendants of their intention to abandon the premises, and alleged that they immediately notified them that they would hold them responsible for the rent accruing under their lease, and that thereafter they commenced the action to recover the rent. They further alleged in reply that, after so notifying the defendants, they rented the property to Dryer for the term of one year, and notified the defendants of their intention to hold them for the rent; that they re-rented the premises for the purpose of protecting their reversionary interest, and to reduce the damages which the defendants might otherwise be compelled to pay; that the defendants never objected to this arrangement; that there was no intention on the part of the plaintiffs to release the defendants. To this reply, a demurrer was filed, raising the question that the facts recited showed acceptance and surrender, and also affirmatively showed an acceptance by operation of law. The demurrer was sustained, and error was assigned upon this ruling. Upon this point, the court said:

"May a landlord, after his tenant has vacated and abandoned the premises without cause, resume possession thereof and re-lease the same to another, after giving notice to the original tenant of his intention of holding him for the rents reserved, and that he had resumed possession for the purpose of protecting the reversion, and had re-let them to reduce the damages which he might otherwise sustain, without being held to have created a surrender by operation of law? * * * The general rule no doubt is that, if the tenant abandons the premises and the landlord re-rents them, a surrender is established. * * * But

nearly every general rule has its exceptions, and one of the exceptions to the rule just quoted is that if the landlord releases them for and on account of the tenant, a surrender is not to be inferred" citing authorities. "* * * It was the duty of the appellants to take such possession of the premises after their abandonment by appellees as was necessary to protect their estate; * * * and they had their election to accept the surrender or to do such acts as would amount to a surrender, or to hold the appellees to their contract. If they gave appellees notice that they intended to hold them for the rent, and re-rented simply to reduce the damages—and this is made to appear by satisfactory evidence—there is no reason for holding that there was a surrender, and that the original tenants were released from their obligation. The demurrer to the reply should have been overruled."

It will be noticed from this case that the court seems to hold that the giving of notice to the tenant of an intent to hold him for the rent, before the landlord takes possession and re-rents it, is a condition precedent to the right to hold him for the reserve rent, after such possession has been taken and re-renting made. It seems to be the holding that notice of intent to hold the tenant for the rent, and a re-renting simply to reduce damages, are essential to be shown, to avoid the presumption of a surrender by operation of law. While we think this rule a good one, applied generally, we do not think it a rule that ought to be applied with absolute strictness to all cases. It is a general rule that a surrender by a tenant during his term, to be effectual, must be accepted by the lessor. It must affirmatively appear that there was a surrender and an acceptance, and the burden is on the defendant to show this, in order to relieve himself of the covenants of his contract to pay rent. The conduct of the parties may be such as will clearly evince an intention to surrender to the land-

lord all rights under the lease, and an acceptance by the landlord òf the surrender. The converse of this is true: The conduct of the parties may be such as clearly shows that there was no intention on the part of the landlord to accept the surrender and terminate the lease. The mere renting of the demised premises to another, after abandonment by the tenant, does not, in and of itself, operate as a surrender in law, for the reason that it is clearly to the appellee's interest, after having abandoned the premises, that the same should be occupied by someone who is willing to pay rental for the premises during the unexpired term of his lease. The landlord may allow the property to stand idle, and hold the tenant for the entire rent, or he may lease it and hold him for the difference. As said in *Breuckmann v. Twibill,* 8 Norris (Pa.) 58:

"Taking possession, repairing, advertising the house to rent, are all acts in the interest and for the benefit of the tenant, and do not discharge him from his covenant to pay the rent."

If the landlord succeeds in securing the same rental for the unexpired term which the original tenant agreed to pay, the tenant is relieved from responsibility to the landlord. If the landlord secures less in the re-renting, the first tenant's obligation to the landlord is reduced by the amount of the rental so received. See *Oldewurtel v. Wiesenfeld,* 97 Md. 165 (54 Atl. 969). In that case, the contention was that the landlord could not repossess himself of the premises and re-rent them and hold the original tenant for any deficiency. The contention practically was that the taking possession and re-renting worked a surrender by operation of law. The court said:

"The best approved cases, however, assert * * * that where a tenant repudiates the lease and abandons the demised premises, and the lessor enters and re-lets the property, such re-renting does not relieve the tenant from

the payment of the rent under the covenants of the lease."

This certainly is true when it is made to appear that the entry of the landlord, after abandonment, and the re-renting, were done and made for the purpose of protecting the tenant from liability, under the covenants of his lease, for the full amount of the rental therein agreed to be paid. And especially is this true when the record discloses that there was no intention on the part of the lessor to release the tenant from the obligations of the lease to pay the reserved rent.

In *Miller v. Benton,* 55 Conn. 529 (13 Atl. 678), it was said:

"In any case of the abandonment of leased premises by a tenant, especially with a declaration that he will never occupy again, the landlord must have the right to take possession for the purpose of caring for the property and of leasing it to others, and is not to be prejudiced by doing so. The rescinding the contract is wholly a matter of intent on his part, and that intent will not be inferred from his merely taking possession, especially when it is found that he did so with no intent to relinquish his rights under the lease."

The same doctrine is held in *Auer v. Hoffmann,* (Wis.) 112 N. W. 1090. For a full citation of the authorities bearing on this question, see *Higgins v. Street,* (Okla.) 92 Pac. 153 (13 L. R. A. [N. S.] 398). See also *Respini v. Porta,* (Cal.) 26 Pac. 967 (23 Am. St. Rep. 488) ; *Alsup v. Banks,* (Miss.) 24 Am. St. Rep. 294; *Auer v. Penn,* (Pa.) 44 Am. Rep. 114; *Marshall v. John Grosse Clothing Co.,* (Ill.) 56 N. E. 807.

These cases hold that, where the premises are abandoned by the tenant, without the fault of the landlord, the landlord may re-enter and re-rent the premises, crediting the former tenant with the proceeds, and the taking possession by the landlord does not relieve the tenant from

liability for the stipulated rent. In the case at bar, it was stipulated and agreed by the parties that the plaintiff rented the premises for the benefit of the defendant, and to avoid loss; that he endeavored to rent the building; that he secured a renter; that, to secure a renter, it was necessary to make alterations and repairs, and that he did make alterations and repairs; and it was through and by this effort and expenditure that he procured the tenant, Milligan; and that defendants' lease had four years yet to run. Under Section 2992 of the Code of 1897, the plaintiff's lien was enforcible against the stock in the building at the time the assignment was made, for the rental for six months. This statute did not terminate the obligation of the defendant to pay rent according to the terms of his lease, but released the lien upon the property in the building after the expiration of six months. By the renting of this for one year from September 1st, the plaintiff secured, for the benefit of the defendant, $720 in rentals, and relieved defendant of his obligation under the lease to that extent. The act of re-renting was clearly for the benefit of the defendant, and, to that extent, relieved him of his obligation to the plaintiff under the lease.

A contract having been fully made between parties, one party cannot rescind the contract on his own motion. To rescind a contract requires a meeting of the minds of the parties, just the same as in the making of an original contract. One party may so conduct himself that he gives to the other the right to rescind—the right to call the contract off; but the other is under no obligation to do this, but may, notwithstanding the hostile conduct of the other, still hold him to the terms of his original contract.

We think there is nothing in this record

2. LANDLORD AND TENANT: rent: abandonment by tenant: expense attending re-leasing.

which shows an abandonment and surrender of the premises to the plaintiff on the 1st of September, 1915. The defendant, therefore, was holden to the plaintiff, un-

der his lease, for the full $240, for the months of July, August, September and October. Plaintiff, on the 1st of September, re-rented the premises. True, he received $120 from the new tenant; but to secure the new tenant—to secure the benefits to the defendant which released him from the obligation under his contract to pay the rental for the year following September 1, 1915—it cost the plaintiff $98.85. It does not appear that this was expended at all for the benefit of the plaintiff, or that these improvements were of a permanent character. We are clearly of the opinion that the plaintiff had a right to deduct this expense from the rent received from the new tenant. This would leave only $21.15 actually received by him from the new tenant to apply on the rental due from the defendant upon his contract; $21.15 from $240 leaves $218.85 due from the defendant to the plaintiff. For this, plaintiff should have had judgment. See *Respini v. Porta,* supra.

The case is, therefore, reversed and remanded, with instructions to enter judgment in favor of the plaintiff for that sum.—*Reversed and Remanded.*

LADD, EVANS and SALINGER, JJ., concur.