## C. R. MILLER & BRO. v. NIGRO et al.
### (No. 1791.)

(Court of Civil Appeals of Texas. Amarillo.
April 13, 1921.)

**1. Landlord and tenant ⊚⟹49(3)—Damages for tenant's breach measured by agreed rental less sum if any realized from reletting.**

Landlord may relet premises upon tenant's abandonment by taking proper precaution not to create a surrender by operation of law, in which case the measure of his damages will be the agreed rental less amount realized from reletting, or he may permit the premises to remain vacant.

**2. Landlord and tenant ⊚⟹49(2)—Landlord's petition for damages for tenant's breach, showing reletting, held not subject to exception.**

In a landlord's action against tenant for breach of contract, a petition showing lease agreement for rental of $250 per month and plaintiff's reletting for $150 a month for balance of term under a lease in which new tenants were to pay $250 a month for second and third years, which were beyond the expiration of the first lease, held not objectionable, since, if the landlord used due precaution or diligence in making contract, acting fairly and honestly, the tenant could not complain.

**3. Landlord and tenant ⊚⟹49(2)—In action for tenant's breach, answer failing to allege fraud or mistake in omitting landlord's alleged agreement to repair held bad.**

In a landlord's action against tenant for breach of written lease containing no agreement for landlord to make certain repairs, an exception to the answer alleging such agreement but failing to allege fraud or mistake in any of the lease terms, is subject to general exception for such defect.

**4. Landlord and tenant ⊚⟹150(1)—No implied warranty on part of landlord that premises are fit for purposes for which leased.**

There is no implied warranty upon part of landlord that premises are fit for purposes for which they are leased and if tenant desired that landlord make changes or repairs he should have such covenant incorporated in the agreement to lease.

**5. Landlord and tenant ⊚⟹34(4)—Right to rescind lease for misrepresentation waived by three years' occupancy.**

A tenant is not entitled to rescission where, after knowledge of alleged misrepresentation of landlord's agent as to the condition of the premises, tenant continued on the premises for over three years under the lease.

**6. Landlord and tenant ⊚⟹34(2)—Tenant may not rescind for breach of oral agreement as to use of balance of premises.**

A tenant does not show himself entitled to rescission of lease by his answer to landlord's action for his breach setting up landlord's oral promise not to allow another part of premises to be used for saloon purposes.

**7. Landlord and tenant ⊚⟹152(10)—On landlord's failure to repair, tenant may recover for amount incurred in repairing.**

In landlord's action for damages on tenant's breach of lease, an answer that plaintiff misrepresented condition of premises, promised to place them in condition and failed to do so, and that tenant employed labor and purchased material, expending a certain sum to make such premises as represented, held not subject to objection.

**8. Landlord and tenant ⊚⟹152(2)—Landlord's oral promise to repair is not without consideration.**

Ordinarily, where a lease does not provide that landlord shall repair premises, there would be no consideration for his oral promise to repair, yet where landlord misrepresented the premises there would be sufficient consideration for his promise to put them in the condition represented.

**9. Landlord and tenant ⊚⟹150(5)—In a landlord's action for breach, tenant might set up expense of putting building in condition represented.**

In a landlord's action for tenant's breach of lease by abandoning premises, defendants might set up damages for restoring the premises to condition represented by the landlord, such expenditure not being merely the expense of repairs which the landlord had not agreed to do.

**10. Appeal and error ⊚⟹682—Objection that in the absence of statement of facts pleading cannot be considered does not apply to a pleading stricken.**

In a landlord's action for tenant's breach of lease, if defendant's pleadings were true, he was entitled to show his damages by reason of plaintiff's false statement as to the condition of the building inducing the lease, and the court, having stricken out this part of the answer, precluded testimony on such issue, so that a statement of facts could not show any proof on that issue, and an objection that because there is no statement of facts, exceptions to such ruling striking pleading cannot be considered, is not well taken.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by N. Nigro and others against C. R. Miller & Bro. Judgment for plaintiffs and defendants appeal. Reversed and remanded.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellants.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellees.

HUFF, C. J. This action was brought by the appellees, Nigro and others, against the appellants, Miller & Bro., to recover damages for breach of a rental contract of certain premises, alleging in effect that they rented said premises to appellants for a term of five years from February 1, 1913, to January 31, 1918, inclusive, for a total rental of

$15,000, payable monthly in advance at the rate of $250 per month; that appellants took possession and occupied and paid rent on the premises from the date of the lease to November 30, 1916, when they abandoned the premises and refused to pay further rent. They sue to recover the full amount of the unpaid rent for the unexpired portion of said lease, amounting to $3,500. They further show that they re-leased the premises for a period of three years, beginning February 7, 1917, for a total rental, by computation, amounting to $7,800, to be paid in monthly installments; for the first year $150 per month and for the remaining two years $250 per month. The answer of appellees will be noticed more in detail hereafter. A jury was selected to try the issues of fact, but the court instructed the jury to return a verdict for the appellees for the principal sum of $1,750, and $257.75 interest, which was accordingly done, and judgment rendered thereon in favor of appellees, against appellants, for the sum of $2,007.75.

[1, 2] The first assignment is to the action of the court in overruling special exception No. 3 to the petition, which, in effect, alleged the abandonment of the rental contract and refusal to pay for the balance of the term. That appellees rerented the premises and had been able to obtain on the rerental the sum of $150 per month for the first year's rent, up to January 31, 1918, which last date was the expiration of the original rental contract, which would leave by computation the total sum of $1,750 for the balance of the unexpired term, which is the difference between the rental contract and the amount received on the rerental. It is alleged in effect this was the best terms which could be obtained for the unexpired term. The verdict and judgment was for the sum of $1,750, with interest, and it is further alleged after the expiration of the term, January 31, 1918, appellees were to receive $250 per month, but it is alleged that, in order to procure this amount, it was necessary to expend $2,711.18 in repairs on the building for the new tenant, and that appellants left the building in such condition that the property could not be rented without such repairs.

The appellants excepted to the petition because it appears therefrom that appellees, for three years, from February, 1917, which included the unexpired term of appellants, leased the premises for $7,800, or an average monthly rental of $216.66, from which the lessors received for the unexpired term $2,744.36, which should be rightfully deducted from the alleged liability for the balance due on the lease, as alleged, $3,250, and which would leave a balance only of $505.64 due by appellants on the lease. We see no error in overruling the exception. It presented more a question of fact whether the appellees should recover the difference between $250 per month and $150, or the difference between $250 and $216.66. We think the pleadings presented the issue whether $150 was the best terms which could be obtained during the remainder of the original lease term. The petition alleges the original contract of lease, by its terms and duration, and the re-leasing and contract and its terms, and the reason for making the latter contract in the way it was made. It became a question of fact whether the balance of the term was rented for all that could be obtained or whether the entire rental contract for three years should be apportioned equally for each month, or whether $150 per month be applied to January 31, 1918, the expiration of the original lease. The balance of the three-year term, after the expiration of the original lease, was for $250 per month. It seems to be recognized that the landlord may relet the premises upon abandonment by the tenant by taking proper precaution to relet to another without creating a surrender by operation of law. When he does relet, the measure of his damages will be the agreed rental less the amount realized on account of such reletting; or he may permit the premises to remain vacant. Goldman v. Broyles, 141 S. W. 283, 286 (5 and 6); Robinson Seed, etc., v. Hexter, 167 S. W. 749; Hickman v. Bradford, 179 Iowa, 827, 162 N. W. 53. We do not think the allegations of the petition show that the tenant was entitled to a credit equal to the apportionment of the entire term per month, but it would be the actual rent received for the unexpired term. If the landlord used due precaution or diligence in making the new rental contract, and it was fairly and honestly made, the tenant has no grounds of complaint. The trial court, we believe, correctly overruled the exception.

[3] The second assignment is to the effect that the trial court erred in sustaining appellees' general exception to certain parts of the appellants' answer to the petition. The appellants present a proposition that where the landlord agrees to make necessary repairs, and fails to do so, and the tenant makes the repairs, he is entitled to recover the reasonable cost thereof. At this time we will not set out the effect of the answer filed by appellants, but simply consider the abstract proposition. The plaintiffs below alleged in their petition that one of the terms of the lease is that the tenants would, at their own expense, keep the premises in good repair. The pleadings of both parties are that the lease was in writing. There is no allegation of fraud or mistake in omitting any of its terms. If there was an agreement on the part of the landlords to make certain repairs it should have been entered in the writing, and if such was the agreement, but omitted, then the appellants should have alleged the omission under proper allegations;

otherwise, they could not show the agreement and its breach. We are inclined to think a general exception would meet such defect in an answer which failed to make the proper allegations of omission from the rental contract. Lynch v. Ortlieb, 70 Tex. 727, 8 S. W. 515.

[4] There is no implied warranty upon the part of the landlords that the premises are fit for the purposes for which they are leased. If the tenants desire to have the landlords make changes or repairs, and to hold them responsible for failure, the tenants should have had such covenant incorporated in the agreement to lease. Case above cited; Periz v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620; Peticolas v. Thomas, 9 Tex. Civ. App. 442, 29 S. W. 166; Blackwell v. Speer, 98 S. W. 903.

[5] The appellants also, in conjunction with each other, present two propositions. The first is to the effect where misrepresentations are made by the landlord's agent as to the condition of the premises and that the actual condition was concealed by dirt and rubbish on the floor, and that the floors were unfit for use for the lessee's purposes, and which, when discovered, necessitated repair, the lessee may make reasonable charge for such cost of repair, and this is so especially where the landlord agreed after entry to make the repairs. The second is, where the lease covers the second floor, and after the lessee has entered into possession, and the lessor, in preparing a floor for another lessee, renders the floor of the second unfit, by tearing it up and running pipes, etc., the second floor tenant is warranted in removing therefrom. The answer in effect, in general terms, alleged the floor was covered with dirt and rubbish when the tenants entered, and upon removing it the tenants discovered the floor was rotten and would require repair. That on December 31, 1912, the agents of the appellees represented the premises were in good repair. The pleadings of both parties show the tenants entered on the premises and occupied them from February, 1913, to December, 1916, over three years. It is alleged that the representation was made that the first floor would not be rented for saloon purposes. That the appellees did, thereafter, lease the same for a saloon, and thereby rendered the same unfit for occupancy by appellants. It was also alleged that in repairing a floor for another tenant that the appellants tore up the floor and placed pipes therein, etc. It will be seen that these representations were made before the lease contract was entered into, and it clearly shows that the dirt and rubbish were on the floor when the appellants entered, and that they removed the same and then learned of the condition of the floor requiring repair. It is not alleged or shown when the saloon was placed in the building. We think under the allegations the appellants show no right of rescission; after knowledge of the fact they continued on the premises over three years under the lease. If they desired to rescind upon the ground of deceit inducing the contract, they should have acted promptly.

[6] As to the saloon, if such was the contract the tenants should have included a defeasance clause in the lease, which does not appear to have been entered, and no damages are claimed by reason of a violation of that contract or for false representation. As to tearing up the floor and running pipes therein, it is not alleged that the appellees did not replace the same, and no injury is shown or any damages sustained by reason of tearing up the floor or when it occurred. These facts so stated we do not think would authorize a rescission, and the answer was defective and we believe a general demurrer would reach that defect.

[7] But appellants, as part of their answer, and, as we understand, a part of which was struck out, alleged:

"By way of cross-action herein, defendants say that though the premises were delivered to defendant in the manner as hereinbefore set out in paragraphs 5 and 6 hereinabove [of which we have attempted to give the effect], and though the plaintiffs continued to promise to repair the same that plaintiffs wholly failed to make such repair in said floors, and wholly failed to protect said elevator as plaintiffs had agreed to do; that the defendants, in the effort to make said building useful and fit for use, did employ labor and purchase material in the total sum of $400, in keeping said premises in repair and in an effort to make the premises fit for the purposes for which it was leased, and that this expenditure did keep said building in sufficient repair to retain possession thereof until it could find premises suitable for its use. Wherefore, defendants pray judgment against the plaintiffs for the amount of said repairs, labor, and materials, so expended on said premises, for which the plaintiffs are liable to the defendants under the law, and asks that said sum be offset against any liability of defendants herein to plaintiffs, etc."

It would seem, therefore, that the appellants sought a recovery for the necessary repair of the rotten floor and the elevator, which they say cost in labor and material $400. The tenants, we think, upon discovering the misrepresentations made in inducing the trade, had the right either to abandon the contract or to affirm it, and sue for damages under the proposition that they were entitled to recover such repairs under such misrepresentations. We are inclined to think the court should have overruled the general exception to the paragraph quoted.

[8] It is also alleged that the landlords promised and agreed to repair the defects. Ordinarily, this would not furnish a consideration for such repair when the landlords had not agreed to repair the premises, as we

understand the authorities heretofore cited, but under the court quoted, the landlords are charged with having induced the contract by misrepresentation. If this is true, we think if they promised to remedy their wrong by repairing the floor and elevator so as to make the condition of the premises as represented, then there would be a sufficient consideration to support the promise, and a failure to do so would render them liable for the necessary and reasonable charges to place the premises in the condition represented.

[9] The appellees seem to think that the allegations of the $400 damages should not be interpreted as an allegation for expenses in restoring the building to the condition represented, but that it was simply expenses in keeping the premises in repair. We think under a general exception every reasonable intendment should be indulged in favor of the pleading, and indulging that intendment in favor of the pleadings here, we are inclined to think it sufficiently alleges that the sum so expended was to place the premises in the condition that they were represented to be in at the time of entering into the contract. A general exception does not call for an itemized statement of the labor or material furnished in doing the work. We are inclined to believe that the case should be reversed in striking out this part of the appellants' answer.

[10] The appellees insist in this court that, inasmuch as there is no statement of facts, that the exceptions to the pleadings cannot be considered or sustained in this court, as no injury can be certainly ascertained or found. When the court struck out this answer, he, of course, precluded the introduction of any testimony upon that issue, and a statement of facts would not show the proof of that question. If the pleadings were true, appellants were entitled to show their damages by reason of the false statement as to the condition of the building, and to introduce evidence to that effect.

The case will be reversed and remanded.

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes