# RICHARD J. BIGGS *vs.* RUDOLPH STUELER.

*Landlord and Tenant—Holding Over After Expiration of Term—Renewal of Lease—Acceptance of Surrender of Term—Admission by Silence.*

When real property is rented for one year and the tenant remains in possession after the expiration of the year with the consent of the landlord, the law implies a subsequent tenancy from year to year ; but if, upon the expiration of the first year of such tenancy, there is an express renewal of the lease for another year, the tenant holds for the definite period of a year and not as tenant from year to year.

When a tenant before the expiration of his term quits the house and sends the keys to the landlord who notifies the tenant that he receives the keys under protest and will rent the house at his risk, and the landlord does subsequently enter, make repairs and rent the house to other parties, these facts are not in themselves sufficient to show an acceptance by the landlord of the surrender of the term so as to release the tenant from all liability for rent.

The failure to answer a letter which makes a certain claim against the person addressed is not to be construed as an admission of the correctness of such claim.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.), where the cause was tried without a jury.  There was a verdict for the plaintiff for $25, and a judgment of *non pros.* for lack of jurisdiction.

*Plaintiff's 1st Prayer.*—If the Court sitting as a jury find from the evidence, that the plaintiff and defendant executed the paper offered in evidence, dated May 2nd, 1895, and that the defendant entered into the possession of the premises therein described, and remained in possession under such lease, after its expiration, paying rent therefor, and that said rent was received by the plaintiff, then the plaintiff by said acts of holding over and paying rent, elected to renew the tenancy for a period not less than six months, nor more than twelve months.  (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the plaintiff and defendant executed the paper offered in evidence, dated May 2nd, 1895, and

that the defendant entered into the possession of the premises therein described, and shall also find that on or about the first day of October, 1895, the plaintiff and defendant entered into a parol agreement, that said lease should be renewed for twelve months, and further that after the expiration of said lease, the lessee actually continued in the possession of said premises, in controversy, paying rent therefor, then the said lessee became a tenant for said period of twelve months.　(*Granted.*)

*Plaintiff's 3rd Prayer.*—If the Court find the facts set forth in the plaintiff's second prayer, and shall further find that after the expiration of the twelve months for which the original lease was renewed, the defendant remained in the possession of said premises, under said renewal of the original lease, after its expiration, paying rent, which rent was received by the plaintiff, then by reason of such holding over and of the plaintiff's receiving rent, the defendant became a tenant from year to year, and the notice necessary from a tenant to his landlord, to terminate such a tenancy in the city of Baltimore, is thirty days' notice in writing, prior to the end of the term.　(*Refused.*)

*Plaintiff's 4th Prayer.*—If the Court sitting as a jury find the facts set forth in the plaintiff's first prayer, and further find that the parties never agreed as to whether the renewal term was to be for six, seven, eight, nine, ten, eleven, or twelve months, then it was for six months.　(*Refused.*)

*Plaintiff's 5th Prayer.*—If the Court find that on or about October 31st, 1899, the defendant was the plaintiff's tenant for an unexpired term of the premises in controversy, and that on said date the defendant left the key to the premises in controversy at the plaintiff's house in his absence, and that on the following day, to wit, the first day of November, 1899, the plaintiff wrote the defendant as follows: " I beg leave to notify you that I can only receive the keys under protest, and that I shall be forced to rent the property for your account and risk, charging you with any loss on same," and shall further find that the defendant never replied to, or dissented in any way from the above terms, then the Court sitting as a jury is authorized to infer from the defendant's silence, that he assented to the terms thus prescribed.　(*Refused.*)

*Plaintiff's 6th Prayer.*—That in respect to the alleged surrender of the premises in controversy, that no such surrender could take effect unless the plaintiff by himself or by his duly authorized agent, accepted such surrender, and although the Court sitting as a jury may believe from the evidence that the defendant vacated the premises in controversy, sending the key to the plaintiff's house, where it was left in his absence, yet this would not exonerate him from the payment of rent, unless assented to by the plaintiff.   (*Refused.*)

*Plaintiff's 7th Prayer.*—If the Court sitting as a jury believe from the evidence, that on or about October 31st, 1899, the defendant was the plaintiff's tenant for an unexpired term of the premises in controversy, and that on said date the defendant left the key to the said premises at the plaintiff's house in his absence, and that on the following day, to wit, November 1st, 1899, the plaintiff wrote the defendant as follows : "I beg leave to notify you that I can only receive the keys under protest, and that I will be forced to rent the property for your account and risk, charging you with any loss on same," then although the Court further find that the plaintiff did enter upon said premises, make such repairs as were necessary, and put upon the premises a sign "For Rent," these acts do not amount to the acceptance of a surrender, provided the Court further find that the said acts are referable to the motive set orth in the plaintiff's letter of November 1st, 1899, rather than to the intention of accepting a surrender..   (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, PEARCE SCHMUCKER and JONES, JJ. ·

*Charles T. Bagby* and *George P. Bagby* for the appellant.

The plaintiff's third prayer refused, asked the Court to say: That if, as the appellant's testimony tended to show, the lease of May 2nd, 1895, was on or about the date of its expiration renewed for the period of twelve months, and if the appellee held over after the expiration of the twelve months under such renewal, and the landlord thereafter accepted rent, then the

appellee became a tenant from year to year. *Taylor on L. &*
*T.,* 525, 526; *Venable's Sylabus,* 60; *Hall* v. *Myers,* 43 Md.
450; *Hobbs* v. *Batory,* 86 Md. 70. That the notice necessary
to terminate a tenancy from year to year in Baltimore City, is
thirty days' notice *in writing* prior to the end of the term.
(*New City Charter,* secs. 844, 847 and 848.)

It must be noted however, that if the appellee entered on
October 2nd, 1899, upon a term of his tenancy from year to
year, then the question of notice is immaterial, for such ten-
ancy could not be terminated even by notice prior to October
1st, 1900.

The theory of the fourth prayer is that if the length of a
tenancy is limited ahead of time to two or more periods, but
at the time of entering upon said tenancy, there is nothing to
show which of the two or more periods was agreed upon, the
situation being equally applicable to both or all, then the law
will favor the tenant by construing most strongly against the
covenantor, and hence declare the new term to be for the
shorter or shortest period. *Wood's L. & T.,* 948, reads :
"But if the lease provides that the tenant, may, if he so
elect, remain in possession for an additional term of one, two
or three years, by merely remaining in possession, he is not
treated as having elected to remain for the longest, but only
for the shortest term." See also *Foley* v. *Giles,* 29 Indiana,
114, and *Wood's L. & T.,* page 650. If then the tenancy en-
tered upon on October 2nd, 1895, was for six months, it ran
from October 2nd to April 1st, and from April 1st to Octo-
ber 2nd, each year, and hence the appellee having occupied
the premises *after October 1st, 1899,* thereby entered upon
another term of six months, and could not terminate the ten-
ancy by notice *prior to April 1st, 1900.*

There are we submit, only three possible theories on the
first issue of this case. (1.) The theory set forth in the plain-
tiff's second and third prayers. This view has been already
treated and the conclusion reached that the tenancy existing
in October, 1899, could not be determined by notice *prior to*
*October 1st, 1900.* (2.) The theory set forth in the plaintiff's

first and fourth prayers. This has been likewise treated, and the conclusion reached, that the tenancy existing in October, 1899, could not be determined by notice *prior to April 1st, 1900.* (3.) The theory of the appellee as disclosed by his testimony. This is, that on or about October 1st, 1895, there was an understanding between himself and the appellant, that thereafter he was merely to rent *by the month.*

Treating the case in accordance with this theory, the case of *Kinsey* v. *Minnick*, 43 Md. 120, decides that the notice necessary to terminate a monthly tenancy in the city of Baltimore is thirty days' notice *in writing.* Now the uncontradicted testimony in the case, of both appellant and appellee is that *no written notice was ever given* up to the time of suit brought.

The appellant (in this case), *had a right to accept the keys under protest, and enter upon, care for and endeavor to re-rent the property for the appellee's account and at his risk.* If then the appellant has this option, and notified the appellee that it was his purpose to exercise it, and the appellee made no objection to or comment upon such course, then, we submit in the prayer, the jury was authorized to (*i. e.,* not must, but might), infer from such conduct the assent of the appellee to the said course. In view of the testimony in this case of both the appellee and appellant that no written notice of intention to quit was ever given, and of the granting by the Court of the plaintiff's first prayer, the verdict for the plaintiff for twenty-five dollars, can, we respectfully submit, be accounted for only upon one theory, which is that there was on or about November 1st, 1899, a surrender by operation of the law of the premises, and that the twenty-five dollars was allowed the plaintiff for damage done to the property by the defendant during his occupancy.

The defendant alleged in his plea and attempted to show at the trial that there was such a surrender of the premises. The plaintiff's sixth and seventh prayers were intended to cover this question proper, *the sixth leading up to and being vitally connected with the seventh.* By refusing the plaintiff's sixth

prayer, upon which his seventh was dependent and without which it was incomplete, the Court we believe failed to give the plaintiff the benefit of the law upon this question to which he was entitled. In refusing the sixth prayer, the Court knocked the prop from under the seventh prayer, thus destroying the latter's real force and effect upon the case.

The plaintiff's sixth prayer refused, simply asked the Court to say that before the alleged surrender could take effect, *the plaintiff must accept it; and that the defendant would not be exonerated from the paymeut of rent, by merely quitting the premises unless the plaintiff assented thereto.* In *Stobie* v. *Dills,* 62 Ill. 433, a case involving surrender by operation of law, a prayer in almost identically the same language was held good. We are not arguing the question of whether or not a surrender by operation of law takes place when the landlord puts *another tenant into possession* of the leased premises ; nor where the landlord himself takes possession in *pursuance of an agreement so to do.* The question in this case is an entirely new one in Maryland, to wit, whether or not a surrender by operation of law takes place, where a landlord, upon finding that the keys to the leased premises have been left at his house in his absence, and the premises themselves deserted in the midst of a term, notifies the tenant promptly that he could only receive the keys under protest, and that he would be forced to re-rent the property for his (the tenant's) account and risk, and in pursuance of said notice, he does care for and endeavor to rent the property.

In *Bedford* v. *Terhune,* 30 N. Y. 463, the Court after saying that if there were any surrender in that case, it was a surrender by operation of law, further says : " It will be seen that in all of the cases, a *mutual agreement* between the lessor and the original lessee, that the lease terminates must be shown \* \* \* \* \* \* \* In short it must be proven that the lessor and the lessee mutually agreed to a surrender of the term." See also *Brenckman* v. *Twibill,* 89 Pa. 59; *Martin* v. *Stearns,* 52 Iowa, 347; *Woodfall on L. & T.* (9th ed.), 267; *Auer* v. *Penn,* 99 Pa. 375; *Hanham* v. *Sherman,* 114 Mass. 19; *Beall* v. *White,* 94 U. S. 382.

The reason for it is that in the absence of fraud, one party to a contract can not rescind it at pleasure. And the landlord may accept the keys, take possession, put a bill on the house for rent, and at the same time apprise the tenant that he still holds him liable for the rent. A surrender of demised premises by the tenant during his term, to be effectual, *must be accepted by the lessor. The burden of proof is upon the tenant to show such acceptance. When therefore, the lessor retains the keys and at the same time notifies the lessee that he will hold him for the rent, there is no room for the presumption of a surrender.* Lucy v. Wilkins, 33 Minn. 442; Withers v. Larabee, 48 Me. 573; Hughes v. Aldrich, 133 N. Y. 292; Ladd v. Smith, 6 Oregon, 316. In Livermoore v. Eddy's, Admr., 33 Mo. 551, the Court says, "The second instruction rests the defendant's discharge not upon any agreement of the appellant's to discharge him, but alone upon their accepting the key and using and repairing the house. This puts the defense on a ground too narrow; it gives to the facts enumerated an importance they do not in law possess, and rejects the more essential element of the defense, to wit the *agreement* of the appellants." See Taylor on L. & T., 515; Aslupp v. Banks, 13 L. R. A. 599; Talbot v. Whipple, 96 Mass. 180; Underhill v. Collins, 132 N. Y. 271.

*It is not inconsistent with the continued possession of an empty house by the tenant, that the landlord put in a care-taker, or entered merely for the purpose of repairing.* * * * *or has put up bills or boards merely for the purpose of re-letting the premises, if they are not in fact re-let thereby.* Auer v. Penn, 99 Pa. 370; Aslupp v. Banks, 13 L. R. A. 598; Livermore v. Eddy's, Admr., 33 Mo. 551; Oassler v. Henderson, 2 L. R. Q. B. Div. 575; Lucy v. Wilkins, 33 Minn. 441; Kirland v. Wolf, 2 B. (Ohio) 114; Meyer v. Smith, 33 Ark. 627; Ladd v. Smith, 6 Oregon, 316; Stobie v. Dills, 62 Ill. 432; Martin v. Steayns, 52 Iowa, 345; Randall v. Thompson, (Texas) 1 App. Cases, sec. 1102; Brenckman v. Twibill, 8 Norris (Pa.) 59; Pier v. Carr, 69 Pa. 328; Thomas v. Nelson, 69 N. Y. 121; Underhill v. Collins, 132 N. Y. 272; Bedford v. Terhune, 30 N. Y. 453; Prentiss v.

*Warne,* 10 Mo. 601; *Crown Co.* v. *Gay,* 13 B. (Ohio) 188; *Nelson* v. *Thompson,* 23 Min. 511.

The Court failed to instruct, that in accord with the above decisions there must, in order to constitute a surrender by operation of law, be something more than the mere act of taking possession, *that acceptance on the part of the landlord of the surrender, must shine through the act, that his assent to the surrender is an essential element of it,* and hence it seems clear that the Court sitting as a jury erred in supposing, that the acts *per se,* effected a surrender, regardless of the intention with which they were done, and of the equivocal nature of the acts themselves.

*John M. Carter,* for the appellee.

PAGE, J., delivered the opinion of the Court.

The appellant on May 2nd, 1895, leased to the appellee a dwelling-house situate in Baltimore City at $28.50 a month, payable in advance. By the terms of the lease, which was in writing, the tenancy was to terminate on the first of October following, without further notice, the lessee to have the privilege of renewing for six or twelve months, provided he gave the lessor thirty days' notice of such intention. The appellee entered into possession of the premises under the lease, and so continued up to October 31st, 1899, when, without previous notice, he removed from and quit the premises.

On the part of the appellant evidence was offered tending to prove that about October 1st, 1895, the appellant reduced the rent to $26 a month, and it was then stipulated that the lease "should run for another year." It was also renewed in 1896, 1897 and 1898, and for the last-mentioned year the rent was reduced to $25 per month. There was no further renewals; but after the first day of October, 1899, the appellee remained in possession until the thirty-first day of October, 1899. On vacating the premises on that date, the appellee sent the keys of the house to the appellant, who, thereupon wrote to the appellee as follows: "I feel greatly surprised, and indignant at this way of

treating me.   Our contract called for thirty days' notice, and
I beg leave to notify you that I can only receive the keys
under protest, and that I shall be forced to rent the property
for your account and risk, charging you with any loss on same,
&c."   The appellant rented the property again on March 15;
and to do that, he was compelled to make certain repairs.   On
the part of the appellee there was evidence tending to show
that on the first day of October, 1895, he—the appellee—had
refused to renew the lease, and thereafter had rented the prop-
erty by the month.   The wife of the appellee testified that
about the fifth of September (it does not appear of what
year), she told the appellant that unless "he had certain
faucets put in they would positively move out on November
the 1st."

The case was tried before the Court, without the interven-
tion of a jury, and the only exception is to the action of the
Court upon the instructions asked for by the appellant.   The
appellee offered no prayers ; the appellant had seven, of which
the first, second and seventh were granted and the others re-
fused.   By the third prayer, the appellant asked the Court to
rule, that if "after the expiration of the twelve months for
which the original lease was renewed, the defendant remained
in possession of said premises *under said renewal*, of the origi-
nal lease after its expiration, paying rent, then by reason of
such holding over the appellant became a tenant from year to
year."   We understand this to mean that if after October 1st,
1896, there was a renewal of the lease for another year, and
thereafter, that is after October 1st, 1897, the appellee remained
in possession, he thereby became a tenant from year to year.
This prayer ignores all the evidence touching the renewals of
the lease after October 1st, 1897.   Mr. Biggs testified that
about October 1st, 1895, the rent was reduced, and the stipu-
lation was made that the "lease should run for another year,"
and that thereafter the lease "ran without change up to Octo-
ber, 1898, and then, the rent was again reduced, with the same
understanding that it (the lease), would continue for another
year."   If the jury accepted this evidence as true they might

have been compelled to find that up to October, 1899, the appellee occupied the premises under successive renewals of the lease ; and on the other hand, if the statements of the appellee were adopted, then, that there was a tenancy by the month, which continued up to the time the appellee vacated the property. Now, if at the expiration of the " twelve months for which the original lease was renewed," the appellee still remained in possession, " under a renewal of the lease," he would not thereby become a tenant from year to year, but for the definite period of one year, from October, 1897 (and so on, if there were subsequent renewals for each year, up to October 1st, 1899); that is, for the certain and definite period set forth by the terms of the lease and of the stipulation, of twelve months. In such case the tenancy would be one for years, and not a tenancy from year to year. When an estate is granted for one or more years, there will be created a tenancy for years, but if no particular period of time is limited for its duration, a tenancy from year to year will arise. 1 *Taylor's Landlord and Tenant*, sec. 54. If therefore, the tenant held over under successive renewals of the original lease, up to October 5th, 1899, he would be during that period, a tenant for years, and not a tenant from year to year. But if the tenant remained in possession, after the expiration of the term of years, that is after October 1st, 1899, with the consent of the landlord, but without a renewal of the lease, the law would imply a new renting, without a definite period for its termination, and a tenancy from year to year would arise. *Hall* v. *Myers*, 42 Md. 450. The prayer was therefore properly refused.

The fourth prayer was improper because under the proofs in the case, if there was a renewal at all, the duration of the term was fixed by the stipulation of the parties. The appellant testifies that "it was to continue for another year." To the fifth prayer the appellee excepted specially, to the effect that there was "no evidence that the defendant *never* replied to, or dissented in any way, from the plaintiff's letter of November 1st, 1899." The prayer did not require that the jury should

find this ; what was put to them was, that if they shall "fur-
ther find that the defendant never replied to or dissented in
any way from the above terms," that is, from the terms con-
tained in the plaintiff's letter of November 1st.   They were
not required by the prayer to find that the appellee never re-
plied to the appellant's letter ; but that he had not replied to,
or dissented from the terms contained in that letter.   There
was testimony that he did reply to the letter, and that he
made no objection to, nor comment upon, the appellant's
renting the property on his account ; and that what he wrote
in reply was, "an abusive letter."   Nor can it be sustained as
an objection to the prayer that it requires the Court sitting as
a jury, to find a question of law, viz. , that the appellee was a
tenant for an unexpired term.   The Court in the first and
second prayers had already defined what the facts were that
were necessary for them to find there was a tenancy ; and the
fifth prayer meant no more than to require the Court to find
a tenancy under those instructions previously given and also
as matter of fact that the term had expired.   The proposition
of law contained in this prayer is that if the term was unex-
pired on October 31st, 1899, and on that day the appellee
sent the key to the appellant in his absence and that on the
next day the appellant wrote to the appellee that he "could
only receive the keys under protest," and "would be forced
to rent the property for his account and risk," "charging him
with any loss on same," and that the appellee never dissented
in any way from those terms, then the Court sitting as a jury
would be authorized to infer from the defendant's silence that
he assented to the terms thus presented.

The sixth prayer was to the effect, in substance, that there
could be no surrender of the premises during the term, unless
both parties agreed thereto, and that without such assent, the
sending of the key and the vacating of the house by the ap-
pellee do not exonerate the appellee from the payment of rent.
The general proposition as to the surrender seems to have had
the concurrence of the lower Court, because by the seventh
prayer which was granted the Court ruled that the leaving of

the key by the appellee, the letter of the appellant, his entry upon the premises, and making necessary repairs, and his placing thereon a sign for rent, did not amount to an acceptance of a surrender, provided such acts of the appellant are referable to the motives set forth in his letter, and not to the intention of accepting a surrender. Both of these prayers, the fifth and sixth, are based on the theory that before a surrender could take place, both the landlord and tenant must assent thereto. On principle, it would seem clear that a contract of renting, like any other, cannot be rescinded without the assent of both parties. Such assent may indeed be expressed or implied from such acts as would reasonably indicate that the parties have agreed that the tenant shall abandon the premises and the landlord assume its possession. This seems to accord with most, if not all, of the adjudicated cases. *Talbot* v. *Whipple*, 14 Allen, 177; *Hanham* v. *Sherman*, 114 Mass. 19; *Underhill* v. *Collins*, 132 N. Y. 271; *Auer* v. *Penn*, 99 Pa. 275; *Bedford* v. *Terhune*, 30 N. Y. 463.

The acts upon which the appellee in this case relies to prove a surrender are the acceptance of the keys by the appellee, the repairs to the house, and the re-letting. But those are insufficient of themselves to show acceptance, unless under all the circumstances they are of such a character as to show a purpose on the part of the tenant to vacate, and on the part of the landlord to resume possession, to the exclusion of the tenant. If at the time when the keys were returned to him the landlord notified the tenant that he received them under protest, would re-rent and hold him for rent, and the defendant assented to such renting, the presumption which might otherwise arise that there was an acceptance of the property would not be reasonable; and if under such circumstances he rented the property it would be plain that he would do so for the lessee's interest, and not with the intent of accepting a surrender. But if the landlord without such assent on the part of the tenant does an act such as taking possession of, and re-letting the premises, which is utterly inconsistent with the relation of landlord and tenant, then, a surrender is im-

plied, and the tenancy is at an end. *Kinsey* v. *Minnick*, 43
Md. 112; *Beall* v. *White*, 94 U. S. 382; *Bedford* v. *Terhune*,
30 N. Y. 463.

The sixth prayer required the jury to find that there was an
assent on the part of the appellant before a surrender could
take effect, and should therefore have been granted. There
was evidence, as we have said, tending to show that the ap-
pellee did not reply to the terms of the letter of the appellant
of November 1st, and did not dissent therefrom, and such
silence by the other is relied on to support the legal in-
ference of his acquiescence. But it is clear both on principle
and authority that we have no right to indulge in the assump-
tion that the letters above referred to had the force and effect
of verbal statements made in the presence of the defendant's
officers. The rule is precisely to the contrary. It is well
expressed in *Learned* v. *Tillotson*, 97 N. Y. 12, as follows:
" We think that a distinction exists between the effect to be
given to oral declarations made by one party to another, which
are in answer to or contradictory of some statement made by
the other party, and a written statement in a letter written by
such party to another. It may well be that, under most cir-
cumstances, what is said to a man to his face which conveys
the idea of an obligation on his part to the person addressing
him, or on whose behalf the statement is made, he is, at least
in some measure, called upon to contradict or explain ; but a
failure to answer a letter is entirely different, and there is no
rule of law which requires a person to enter into a corres-
pondence with another in reference to a matter in dispute be-
tween them, or which holds that silence should be regarded
as an admission against the party to whom the letter is ad-
dressed. Such a rule would enable one party to obtain an
advantage over another, and has no sanction in the law." To
the same effect are *Bank of British N. A.* v. *Delafield*, 126 N.
Y. 418, 27 N. E. 797, and *Thomas* v. *Gage*, 141 N. Y. 506,
36 N. E. 385.

The fifth prayer founds the assent of the appellee entirely
upon his silence in reference to the proposal in the appellant's

letter of November the first, and this was error.    This prayer was properly refused.

For error in refusing to grant the appellant's sixth prayer the judgment must be reversed.

*Judgment reversed with costs and cause
remanded and new trial.*

(Decided March 7th, 1901.)