EIDELMAN ET AL. *v.* WALKER & DUNLOP, INC.

[No. 342, September Term, 1971.]

*Decided May 17, 1972.*

The cause was argued before BARNES, MCWILLIAMS, FINAN, ▮ SINGLEY, SMITH and DIGGES, JJ.

*Philip O. Foard,* with whom were *David Monoker, George W. White, Jr., and Buckmaster, White, Mindel & Clarke* on the brief, for appellants.

*Joseph I. Huesman,* with whom were *Lerch & Huesman* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We here have cross-appeals relative to the liability of guarantors of a lease for a drugstore in a shopping center. The premises were vacated after a receiver was appointed for the lessee.

Appellee and cross-appellant, Walker & Dunlop, Inc. (Walker & Dunlop), acted as landlord, including the bringing of suit in this case, for Pikesville Shopping Center at 1402 Reisterstown Road, Pikesville. On December 29, 1964, a lease was made to Ideal Drugs, Inc. (Ideal). Appellants and cross-appellees, Albert Pearlman and Nathan Eidelman, joined in the lease for the purpose of guaranteeing performance of all Ideal's obligations under the lease. Eidelman was president of Ideal.

The lease was for a period of eight years beginning January 1, 1965. The leased property was to be used "for no other purpose" than a drugstore as defined in

the lease. Rent was $8400 annually payable in advance in monthly installments of $700. In addition, the tenant was to pay a proportionate part of the cost of lighting and maintenance of the parking area.

Pearlman was the owner of drugstores in the Washington area. He supplied financial assistance and credit standing with the trade. Eidelman, a pharmacist, managed the business.

The business did not prosper. The Circuit Court for Baltimore County appointed a receiver. The receiver forwarded the key to the front door of the leased area to Walker & Dunlop on September 3, 1968. He advised that one other key was being left in the possession of another tenant in the shopping center "in the event that it was necessary for someone to enter the premises because of any emergency." A subtenant of Ideal occupied a part of the premises at a rental of $200 per month. The receiver advised Walker & Dunlop that he was writing to that subtenant stating that the receiver would not accept payment of any rent in the future from the subtenant and that all future dealings of the subtenant relative to the premises should be with the landlord. Prior to this, there had been a sale by the receiver of the contents of the store, including equipment.

On November 26, 1968, Walker & Dunlop advised Eidelman and Pearlman "as guarantors of the lease * * * that [the] lease [was] terminated as of November 30, 1968, and that repairs to these premises in an estimated sum of $7200.00 [were] necessary," the premises having been "left a shambles after the inventory, furniture and fixtures of Ideal Drugs, Inc., were sold." Demand for repairs was made. The guarantors were advised of the intent to hold them "responsible, in addition to the repairs * * *, for all back rent, maintenance and utility charges which [were] unpaid, as well as all damages [the landlord might] sustain for loss of rentals, et cetera, until the premises [were] re-occupied by a tenant." The lease obliged the tenant upon termination to deliver up

the premises "in as good condition and repair as the same [were] at the commencement of said term, loss by fire or other casualty, defects inherent in construction, ordinary wear, decay and depreciation and any repairs which the Lessor [might be] responsible for by the lease only excepted."

The store was re-rented as of May 1, 1970. The subtenant of Ideal continued to pay $200 per month up to that time.

Suit was brought against the guarantors on behalf of the landlord for loss in rent up to the time of re-renting and the cost of repairs. Judge MacDaniel, who heard the case without a jury, found against the landlord on the matter of repairs, saying:

> "The Court in this case was presented with evidence from the landlord that showed quite frankly that there was damage done by the tenant but the presentation of evidence left the Court in a position that it is absolutely impossible to make a determination on that evidence presented by the landlord as to which part of the damages were the responsibility of the tenant and which part was merely necessary to place the premises in a rentable condition for a new tenant, not necessarily similar to that of the original tenant."

He found in favor of the landlord, entering judgment in the amount of $11,540 for rent and parking lot maintenance charges. He declined to allow interest on the arrearages in rent, stating that "this [was] discretionary with the Court and the Court [was] disallowing any interest."

Neither party is happy. The guarantors claim that there should have been no judgment against them. The landlord contends that interest on the rent should have been allowed and that judgment for the cost of repairs should have been entered in its favor.

## THE RENT

No contention is made that the computations on which Judge MacDaniel based his decision are in error on either the rent or the parking lot charges. Rather, the guarantors argue that the trial judge "erred in not finding that the legal effect of the landlord's actions after abandonment of the premises constituted a termination of the lease agreement." They also raise the point that "[t]he trial court erred in determining that the landlord, after taking over complete control of the premises, was under no duty to mitigate its damages and that the date of re-letting to a new tenant fixed the amount of damages due and owing as the amount of rent stipulated in the lease for the period the premises were unoccupied," contending that "the uncontradicted evidence showed that the landlord refused to consider or allow any new tenants to take over, except for a substantial increase of rent, even though there were a number willing to take over on the same terms and conditions contained in the subject lease," and claiming also that "the landlord did rent the premises for a substantial increase in rent, creating a sizeable surplus over the balance of the defaulting tenant's term, but with no credit being allowed."

The contentions relative to mitigation of damages must fall by the wayside. First of all, the evidence does not bear out the contentions of the guarantors. More important, however, in this instance is the fact that in Maryland the majority rule prevails which is that a landlord is under no obligation to mitigate damages. Judge (now Chief Judge) Hammond said for the Court on this subject in *McNally v. Moser,* 210 Md. 127, 122 A. 2d 555 (1956):

> "It is generally held that a landlord, where a tenant has vacated the leased premises, is under no duty to seek a new tenant but may let the premises lie idle and recover the rent without taking steps to lessen the damages. See cases collected in the annotations in 40 *A.L.R.* 190 and

126 *A.L.R.* 1219. It is stated in the first annotation that in all but two jurisdictions the courts have adopted this view. This Court seems to have agreed. See *Adreon v. Hawkins,* 4 Harris & J. 319; *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 176; *Biggs v. Stueler,* 93 Md. 100-111; and *Gomprecht v. Dunleer Co.,* 164 Md. 653, 659." *Id.* at 141.

*See* to this effect relative to the majority rule Annot., 21 A.L.R.3d 534, 541, 546 (1968).

Re-entry by a landlord when a tenant has abandoned the premises does not relieve a tenant of his liability under his lease. *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 176, 54 A. 969 (1903). The original lease was a contract. Therefore, there must be a contract in the nature of an assent by the landlord to the surrender of the premises by the tenant before it can be said that there has been a surrender of the premises. *Biggs v. Stueler,* 93 Md. 100, 112, 48 A. 727 (1901). 49 Am.Jur.2d *Landlord and Tenant* § 1095 (1970), states:

"Generally, a surrender of demised premises occurs only through the consent or agreement of the parties, evidenced either by an express agreement or by an unequivocal act inconsistent with the terms of the lease and with the relation of landlord and tenant, or by acts so inconsistent with the terms of the lease as to imply in law an agreement to surrender, and hence, an acceptance by the landlord is requisite. Whether there has been surrender and acceptance thereof is to be determined by the intention of the parties, and thus, it is usually a question of fact for the jury. Where the lessee contends that the surrender was accepted, he has the burden of showing that to be the fact. However, the agreement may be presumed and the surrender may arise by operation of law under certain circumstances."

*See Prevas v. Gottlieb,* 229 Md. 188, 182 A. 2d 489 (1962), there cited. In *Joyce v. Bauman,* 113 N.J.L. 438, 174 A. 693 (1934), the Court of Errors and Appeals of New Jersey said:

> "It is only when the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant, and execute that intent by acts tantamount to a stipulation to put an end thereto, that a surrender by act and operation of law arises. *O'Neil v. Pearse,* 87 N.J.L. 382; affirmed, 88 Id. 733." *Id.* at 440.

The letter from the landlord to the guarantors makes plain the intention of the landlord to hold the guarantors responsible. A re-rental for a term longer than that under the existing lease, as was done here, is regarded as a surrender by operation of law, since it is an act inconsistent with the landlord-tenant relationship. There is no liability for rent thereafter. Since there could be no liability thereafter upon the part of the tenant, it follows that the guarantors could not expect to receive a reduction of their liability upon the ground that thereafter the liability of the new tenant would be for a monthly rental greater than that in the lease to the original tenant. As a matter of fact, it could well develop that the landlord's experience with the new tenant might prove to be no more profitable than his experience with the insolvent tenant here, since the new tenant might also fail to perform.

The important issue in this case is when the tenancy terminated. Impliedly, by his assessment for purposes of the judgment, the trial judge found that it terminated on the date the new tenancy began. The tenant's offer of surrender of the premises stood open and unrevoked until its acceptance at that time by the landlord. Until then there was no action by the landlord indicative of an intent to terminate the liability of the tenant under the lease. Accordingly, we perceive no error.

## INTEREST

Interest is recoverable as of right upon a contract to pay money upon a day certain. *Isle of Thye Land Co. v. Whisman,* 262 Md. 682, 708, 279 A. 2d 484 (1971) ; *St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 236, 278 A. 2d 12 (1971) ; *A. & A. Masonry v. Polinger,* 259 Md. 199, 203-04, 269 A. 2d 566 (1970) ; *City Pass. Ry. v. Sewell,* 37 Md. 443, 452 (1873) ; and cases there cited. Sums payable as rent come within this holding and a landlord is entitled to interest on rent from the day it becomes due and payable. *Brown v. Bradshaw,* 245 Md. 524, 539, 226 A. 2d 565 (1967), and *Dennison v. Lee et ux.,* 6 G. & J. 383, 386 (1833). Therefore, the trial judge erred in not allowing interest. Upon the remand interest will be allowed on each rent payment from the date that it became due and payable.

## REPAIRS

The burden of proof on the issue of repairs was on the plaintiff, the landlord. For many years juries have been instructed at the request of defense counsel to the effect that if the evidence on a given proposition left their minds in a state of even balance or equipoise, then their verdict should be for the defendant because the plaintiff had not met his burden of proof. *See, e.g., Thomas, Prayers and Instructions* (1908), § 311, p. 227, citing *Ohlendorf v. Kanne,* 66 Md. 495 (1887), where Judge (later Chief Judge) Robinson said of such an instruction:

> "The appellant's second prayer to this effect, announces an elementary principle everywhere recognized, and should have been granted." *Id.* at 500.

A judge sitting as a trier of fact is not expected to go further in reaching a conclusion from the evidence before him than a jury. Maryland Rule 886 commands us not to set aside on the evidence the judgment of a trial

court "unless clearly erroneous," having due regard for "the opportunity of the lower court to judge the credibility of the witnesses." We cannot conclude that Judge MacDaniel clearly erred in this instance when he said that the plaintiff had not established the responsibility of the tenant and, therefore, of the guarantors for the repairs.

> *Case remanded for modification of judgment in accordance with this opinion; appellants to pay the costs.*