WILSON ET UX. *v.* RUHL

[No. 125, September Term, 1975.]

*Decided May 5, 1976.*

608

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Gary A. Graham* with whom were *Graham, Graham & Graham* on the brief, for appellants.

*Saunders M. Almond, Jr.,* for appellee.

SINGLEY, J., delivered the opinion of the Court.

By Chapter 12, § 2 of the Laws of 1974, now codified as Maryland Code (1974), Real Property Article § 8-207, effective 1 July 1974, the General Assembly abrogated the common law rule that a landlord was under no duty to mitigate damages in the event of a breach of the covenants of a residential lease by his tenant.[1]

Section 8-207 now provides, in part:

"(a) *Duty to mitigate damages.* — The aggrieved party in a breach of a lease has a duty to mitigate damages if the damages result from the landlord's or tenant's:

"(1) Failure to supply possession of the dwelling unit;

"(2) Failure or refusal to take possession at the beginning of the term; or

"(3) *Termination of occupancy before the end of the term.*" (emphasis added).

---

1. Maryland had always followed the common law rule, which remains the majority rule today, Eidelman v. Walker & Dunlop, Inc., 265 Md. 538, 542, 290 A. 2d 780, 783 (1972); Annot., 21 A.L.R.3d 534 (1968).

On 18 June 1973, R. Edwin Wilson and Patricia C. Wilson (the Wilsons) leased from Sara Ann Ruhl a residence at 15 Flanders Ridge Court in Baltimore County for a term commencing 15 July 1973 and ending 31 July 1974, at a rental of $345.00 a month. By its terms, the lease would renew itself for another year unless 90 days' written notice were given prior to the end of the term.

It is conceded that the Wilsons' notice, given on 28 May 1974, was not a timely notice. Upon receiving the Wilsons' notice, Mrs. Ruhl responded, on 14 June 1974, by letter that it was not her responsibility to find a new tenant and that the lease was not assignable nor could the premises be sublet. The Wilsons vacated the premises on 31 July 1974, the July rent having been paid, at which time Mrs. Ruhl held a security deposit of $345.00, equivalent to one month's rent.

On 27 July 1974, Mrs. Ruhl listed the property for sale with the real estate firm of Russell T. Baker & Co., with which she was associated. On 30 September 1974, she listed the property as for sale or for rent, and on 21 October 1974, the property was listed as for rent. Finally, a new tenant was found who took possession on 1 December 1974.

Thereafter, Mrs. Ruhl brought suit against the Wilsons in the District Court for Baltimore County, which entered judgment in Mrs. Ruhl's favor against the Wilsons for $345.00 (the amount of the security deposit) plus $1.00. On appeal to the Circuit Court for Baltimore County, that court entered judgment against the Wilsons for $1,035.00, being three months' rent, in addition to the security deposit, or rent for the period 1 August to 30 November 1974.

We granted certiorari in order that we might determine whether Mrs. Ruhl had discharged the duty to mitigate damages imposed upon her by the statute. Under the facts of this case, we conclude that she did not when she initially offered the property for sale, any more than she would have, had she offered the property for rent at a clearly exorbitant rate.

Section 8-207 of the Real Property Article, as we have already noted, abrogated the common law rule that a

landlord was under no duty to mitigate his damages upon an abandonment of the premises by the tenant. Precisely stated, this common law rule placed three options before a landlord upon the tenant's abandonment: (1) the landlord could accept the abandonment, by reentry for his own benefit, and thereby effect a surrender which terminated the tenancy altogether; (2) the landlord could reenter the premises for the account of the tenant, attempt to rerent on behalf of the tenant, holding the tenant liable for any accrued rent at the time of the reentry plus any deficiency in the event that the reletting was for a lower rent than the original rental; (3) the landlord could do nothing, holding the tenant liable for the rent for the entire term.

It was the third option which, in effect, was eliminated by § 8-207. The first option, acceptance of an abandonment, which terminated the tenancy, relieves the tenant of any further obligation to pay rent. The second option amounts to an election by the landlord of assuming a duty to mitigate his damages. Thus, the net effect of § 8-207 is simply to eliminate the third option from the landlord's arsenal, limiting his choices either to accepting the abandonment or to an undertaking to relet the premises on behalf of the tenant. These two choices comprise the so-called minority rule, now applied in a growing number of jurisdictions. See, e.g., *Wright v. Baumann*, 398 P. 2d 119, 120-21 (Ore. 1965); 3 H. Tiffany, Real Property § 902 (3d ed. 1939); Cal. Civ. Code § 1951.2 (West 1954, 1976 Cum. Supp.). We shall, therefore, examine the law under the minority rule, for we are of the opinion that the General Assembly, in adopting § 8-207, intended merely to adopt the minority rule as the law of Maryland.

We begin by noting that the minority rule only requires the landlord to exercise reasonable diligence in an effort to obtain a new tenant, *Myers v. Western Farmers Ass'n*, 449 P. 2d 104, 106 (Wash. 1969); *Gordon v. Consolidated Sun Ray, Inc.*, 404 P. 2d 949, 953 (Kan. 1965); *see also*, 49 Am. Jur. 2d *Landlord and Tenant* § 622 (1970). Thus, the landlord has not necessarily breached his duty to mitigate because a

new tenant could not be found. It is normally left to the trier of facts to determine whether the landlord's efforts to relet satisfied his duty to mitigate, *Hirsch v. Merchants Nat'l Bank & Trust Co.*, 336 N.E.2d 833 (Ind. App. 1975).

What we must determine, therefore, is whether it can be said that Mrs. Ruhl satisfied the duty to mitigate, imposed by § 8-207 of the Real Property Article, when she listed the property for sale on 27 July 1974. We are firmly of the opinion that she did not, because the duty to mitigate damages, in our view, specifically requires the landlord to exercise reasonable diligence to relet the premises. We have reached this decision by examining the cases in those jurisdictions which follow the minority view in light of the fact that we believe that the purpose of § 8-207 was to adopt the minority view.

In *Coffin v. Fowler*, 483 P. 2d 693 (Alas. 1971), the landlord reentered the premises following an abandonment by the tenant. Thereafter, the landlord sold a house trailer which was the only dwelling on the property. The Alaska Supreme Court held this action to be an acceptance of the tenant's abandonment, *i.e.*, a surrender, which terminated the leasehold estate. As often pointed out, reentry by a landlord is an equivocal act; the landlord may be entering on behalf of the tenant in an effort to mitigate, or he may be reentering on his own behalf in order to cause a surrender, see, *e.g., Consolidated Sun Ray, Inc. v. Oppenstein*, 335 F. 2d 801 (8th Cir. 1964); *Gordon v. Consolidated Sun Ray, Inc., supra,* 404 P. 2d at 953.

Thus, where the landlord reenters and lists the property for sale, as Mrs. Ruhl did, it is unclear whether the reentry was in order to cause a surrender or to attempt to mitigate. It is obvious, however, as *Coffin v. Fowler, supra,* holds, that had Mrs. Ruhl sold the property, a surrender would have occurred because resale, akin to reletting for a term longer than the original term, is so inconsistent with the tenant's estate as to allow for no other interpretation than that the landlord had reentered in order to accept a surrender, *Eidelman v. Walker & Dunlop, Inc.*, 265 Md. 538, 544, 290 A.

2d 780, 784 (1972).[2] Here, however, Mrs. Ruhl later listed the property for sale or rent, an act which is at least partially consistent with an effort to mitigate her damages. We, therefore, hold that the listing of the property for sale did not satisfy the duty to mitigate damages, but that the listing of the property for sale or rent and later for rent did satisfy that duty.[3] Surely, § 8-207 requires no more than that the landlord seek out a reputable real estate broker and list the property for rent with that broker.

There is a split of authority in those jurisdictions which have adopted the minority view as to who has the burden of proving mitigation by the landlord. In Iowa, for example, the burden is placed on the landlord, *Vawter v. McKissick,* 159 N.W.2d 538, 541 (Iowa 1968); *Benson v. Iowa Bake-Rite Co.,* 207 Iowa 410, 416, 221 N. W. 464, 467 (1928). In Indiana and Nebraska, on the other hand, the burden is placed on the tenant to show that the landlord failed to exercise reasonable diligence to find a new tenant, *Hirsch v. Merchants Nat'l Bank & Trust Co., supra,* 336 N.E.2d at 836; *Bernstein v. Seglin,* 184 Neb. 673, 677, 171 N.W.2d 247, 250 (1969). We need not here determine where the burden under § 8-207 should be placed, for no matter who had the burden, Mrs. Ruhl or the Wilsons, the fact of the listing of the property for sale was in evidence, and that fact, could not have been an appropriate attempt on Mrs. Ruhl's part to mitigate her damages, no matter what her purpose or intention might have been.

---

**2.** We have been referred to no case and have found none in which a landlord reentered and listed the property for sale in a jurisdiction imposing a duty to mitigate on the landlord. See, however, Wohl v. Yelen, 22 Ill. App. 2d 455, 161 N.E.2d 339 (1959) and Harmon v. Callahan, 214 Ill. App. 104 (1919). Illinois does not normally require a landlord to mitigate his damages; nevertheless, in *Harmon,* the lease required the landlord to "relet," but, instead, the landlord attempted to sell the property. This was held to be a breach of the landlord's duty imposed upon him by the lease. In *Wohl,* the landlord refused to accept a substitute tenant tendered to him by an abandoning tenant on the pretext that the landlord preferred to sell the property. The court held that a landlord is under a duty to accept a suitable substitute tenant despite the absence of a general duty to mitigate damages.

**3.** There was no evidence that Mrs. Ruhl failed to act in good faith when she offered the property for sale, there being no contention that the asking price of $55,000.00 was excessive.

As a consequence, we are satisfied that the most Mrs. Ruhl is entitled to is a judgment for $690.00, being the rent for October and November, 1974, when the property was actually listed as either for sale or rent or only for rent, less the security deposit which was equal to one month's rent. The property was ultimately rented for a term of one year on 1 December 1974. While we regard the brokerage commission paid by Mrs. Ruhl as a necessary expense in mitigation, we are of the opinion that the Wilsons are liable for only two-thirds of that commission because the property was leased for their account only for the eight month period from 1 December 1974 to 31 July 1975, and the reletting for a term longer than the Wilsons' term caused a surrender by operation of law, *Eidelman v. Walker & Dunlop, Inc., supra,* 265 Md. at 544. Thus, the judgment should have been for $345.00 in rent plus $193.20 in commissions, or $538.20. We regard the fact that, as the listing agent, Mrs. Ruhl received $72.45 of the commission, to be of no consequence under the facts of the case.

> *Judgment of the Circuit Court for Baltimore County reversed; case remanded to that court for the entry of a judgment for $538.20 plus interest and costs against appellants in favor of appellee; costs of this appeal to be equally divided between the parties.*