J. LAWRENCE MILLISON *v.* JOSEPH ABEL CLARKE
ET UX.

[No. 1254, September Term, 1978.]

*Decided July 10, 1979.*

The cause was argued before MORTON, MOYLAN and LOWE, JJ.

*David M. Williams* for appellant.

*Thomas P. Smith* for appellees.

LOWE, J., delivered the opinion of the Court.

This is a second rent recovery action arising out of the breach of a lease. It constitutes an appeal and the embryo of a cross-appeal. The facts are carefully set forth in the first *Millison v. Clarke,* 32 Md. App. 140 (1976). It will suffice for our primary concern here that the trial judge granted summary judgment against appellant holding that a releasing of the premises to C.E.L., Inc., by the landlord for a term in excess of the breached original lease operates as an acceptance of surrender by the lessee, as a matter of law. For purposes of summary judgment it is admitted that the appellees were notified that the reletting was intended to mitigate appellees' damages but was not to be construed as an acceptance of the offer of surrender of the premises from appellees by appellant. He expressly apprised appellees that they would be held responsible for the diminution of rental between that which they had contracted to pay before the breach, and that for which appellant was able to relet the property.

As recently reiterated by the Court of Appeals, *Honaker v. W.C. & A.N. Miller Development Co.,* 285 Md. 216 at 231 (1979), the function of a summary judgment proceeding is not to try the case or to attempt to resolve factual disputes, but to determine whether there is a dispute as to material facts sufficient to provide an issue to be tried. 285 Md. at 231; *Dietz v. Moore,* 277 Md. 1, 4-5 (1976). Even if the underlying facts are undisputed all inferences must be resolved against the proving party. *Honaker, supra* at 231. Accordingly, the primary issue before us in the present case is a very narrow one. Does the releasing of a premises for a term in excess of the balance of a breached lease result in an acceptance by a lessor of an offered surrender of premises by the breaching lessee, as a matter of law? If it does, summary judgment was properly granted. If it is merely an indication of an intent to accept the surrender, it, along with other evidence, becomes a matter for the factfinder.

It is hornbook law in Maryland that a commercial landlord may hold a breaching tenant for the entire amount of the rent due under a lease without seeking to lessen his damages. *McNally v. Moser,* 210 Md. 127, 141 (1956). It is equally accepted that he may mitigate by reletting without relinquishing his claim against the breaching tenant for the unmitigated rental. *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 176 (1903). Mitigation for breach of residential leases has become a statutory prerequisite. Md. Real Prop. Code Ann. § 8-207 (1974). The reletting after breach for a term less than the term of the breached lease is a fact to be considered, but is not conclusive of the landlord's intent to accept surrender of a lease.

Maryland has not yet decided whether the reletting for a term in excess of the breached term is an inferential factor indicative of intent to accept surrender or operative to effect such surrender as a matter of law. The Court of Appeals by dicta, strong dicta, has indicated its leaning toward the latter. The trial judge below relying upon that dicta, pointed out that:

> "In *Eidelman v. Walker & Dunlop, Inc.,* 265 Md. 538, 544 . . . (1972) the court stated that: 'A re-rental for a term longer than that under the existing lease, as was done here, is regarded as a surrender by operation of law, since it is an act inconsistent with the landlord-tenant relationship. There is no liability for rent thereunder.'
>
> While *Eidelman* is not completely clear whether this factor alone constitutes an acceptance as a matter of law, there is dicta in *Wilson v. Ruhl,* 277 Md. 607, 611 . . . (1976), which indicates that this is the interpretation which the court intended. In discussing whether sale of the leased property would have released the tenant from liability the Court said that: '. . . had Mrs. Ruhl sold the property, a surrender would have occurred because resale, *akin to reletting for a term longer than the original term, is so inconsistent with the tenant's estate as to allow for no other interpretation* than that the landlord has reentered in order to accept a surrender.' [citing

*Eidelman v. Walker & Dunlop, Inc.*] (emphasis supplied). Such an act by the landlord is inconsistent with the continuing operation of the original lease and is of an unequivocal nature demonstrating that the landlord has accepted the offer of surrender."

The trial judge further recognized that there are divergent views followed in the United States. The more rigid he referred to as the New York law and the more flexible was explained encyclopedically.

"The New York cases hold that any reletting for a period beyond the original term constitutes an acceptance of the surrender as a matter of law. The theory underlying these cases is that any such reletting is repugnant to the lease relationship with the original tenant since it interferes with the tenant's right to dominion and control over the premises and shows an intent to exclude the lessee from resuming possession following his abandonment. The landlord is thus viewed as acting on his own account rather than on the account of the tenant whenever he relets beyond the unexpired term. Such is an unequivocal act which implies that the parties have agreed to consider the surrender as being effected, thereby releasing the tenant from liability on the lease. *In Re Kerr,* 19 F. Supp. 414 (S.D.N.Y. 1939); *Bonsignore v. Koandel,* 134 Misc. 344, 235 N.Y.S. 453 (1929).

The other view (which is generally followed by those states which hold that surrender is a matter of intention and a question of fact in situations where the reletting is short of the unexpired term) is that spelled out in 51 C.J.S. *Landlord and Tenant,* § 125 (8):

'Ordinarily, the execution of a new lease for a term extending beyond that fixed in the original lease, with the tenant's consent, is an indication of an intent to accept the surrender, even if the original lease

> authorizes the landlord to relet on the tenant's account without thereby terminating the lease, but is not conclusive on such intent.' "

He concluded that

> ". . . the Maryland cases dealing with this issue contain strong language that the execution of a new lease extending beyond the period of the abandoning lessee's term indicate an acceptance of the lessee's as a matter of law.",

and he so held:

> "The Court holds, as a matter of law, that the offer of surrender by the Clarkes was accepted by the landlord Millison at the time the C.E.L., Inc. lease was entered into. The original tenancy, and liability therefore, terminated on the date the new tenancy began. See, *Eidelman,* supra, 265 Md. at 544."

Upon that premise he granted summary judgment on behalf of appellees and denied a similar motion of appellant.

Perhaps indicating his hesitancy of relying upon appellate dicta, the trial judge justified his conclusion by noting that:

> "In the instant case, the conclusion that the landlord was acting on his own account rather than on the account of the original tenant is strengthened by the different provisions which were inserted in the lease with C.E.L., Inc. In particular, the 'coin machine agreement' and the provision for payment of all real estate taxes provide mechanisms through which the landlord can generate substantial additional revenues none of which would go towards mitigating damages resulting from the tenants' abandonment of the leased premises."

But these facts are only relevant if his legal conclusion was incorrect, and then, of course, only to be considered after denial of the motions for summary judgment in a subsequent factfinding role.

We hold that the judge erred in granting the summary judgment motion of appellees. The statement in *Wilson* citing *Eidelman* upon which the court relied says nothing more than that the reletting for the longer term than the original term is an act

> ". . . so inconsistent with the tenant's estate as to allow for no other interpretation than that the landlord has reentered in order to accept a surrender."

But the hypothetical example alluded to in *Wilson* presupposes the act of reletting as standing evidentially alone. In an evidentiary vacuum without contractual explanation therefore, the reentry and reletting which preempts the tenant's entire estate is conclusively a landlord's reserved dominion over his property. But where the evidence indicates a flow of correspondence contradicting that interpretive conclusion, as is the case here, the apparent "inconsisten[cy] with the tenant's estate" should be placed in factual balance against the evidence to the contrary. The final letter from appellant to appellees regarding appellant's intention to relet "to help mitigate damages," as sent on May 14, 1974, was presumably received without reply by appellees. It concluded with the following paragraph:

> "Please keep in mind that we have always apprised you that we intend to help to mitigate the damages of Mr. and Mrs. Clarke by constantly searching for interim tenants during the period of the original lease obligation of your clients. It has not been in the past, it is not now, and it will not in the future be our intention to release your clients from the lease agreement obligations as contained in the lease dated June 22, 1972."

Appellees make much of the term used by appellant that he would be searching for "interim" tenants. Mitigating tenants during the "interim" of appellees' lease is, of course, the only tenancy relevant to appellees. What was inferentially intended to be conveyed by that adjectival expression is a factual determination, but is hardly so conclusive as to devoid

that correspondence of *any* weight or consideration by a factfinder.

Nor can it be said that, when the premises were let two years after the May 14th letter, the fact that the reletting exceeded the original term was interpretatively conclusive of acceptance of surrender in light of so forceful an expression of intention to the contrary. Thus, the mutual intent to surrender by the tenants and to accept surrender by the landlord is a contractual prerequisite of mind meeting necessary to abrogate the original contract. As pointed out by Judge Smith in *Eidelman:*

"The original lease was a contract. Therefore, there must be a contract in the nature of an assent by the landlord to the surrender of the premises by the tenant before it can be said that there has been a surrender of the premises." *Id.* at 543.

Perhaps more than the *Wilson* sentence, the term "operation of law" used in *Eidelman* to explain the force and effect of the evidentiary conclusion of a preemptive reletting standing alone, misled the trial judge. The term "operation of law," especially in its comparative example context used in *Eidelman,* expresses the manner in which rights and liabilities devolve upon a person by the mere application to a particular transaction of the established rules of law, without the act or cooperation of the party himself. *See Black's Law Dictionary* 1243 (4th ed. 1968). It is only one evidential inference, conclusive when standing alone, of an effervescent intent. As noted in *Eidelman, supra* at 544, quoting from *O'Neil v. Pearse,* 87 N.J.L. 382, the operation of law effecting a surrender by such act occurs only when the minds of the parties to the lease concur in common intent and

"execute that intent by acts tantamount to a stipulation to put an end thereto ...."

As pointed out by the factual references of the trial judge on the one hand, as opposed to the early correspondence indicative of a contrary intent on the other, the issue is a factual one to be weighed by a factfinder. We express no

opinion upon the factual inferences and conclusions the judge drew to bolster the result he reached "as a matter of law." Furthermore, we need hardly state that although the judge erred in granting summary judgment to appellees, he correctly denied it to appellant.

A third, less involved issue arose and is left unsettled. The judge granted appellant summary judgment as to appellees' liability for rent from May 1, 1975, until October 31, 1976, immediately preceding the C.E.L., Inc. lease, but left open for trial the damages because of a conflict in evidence as to the amount of mitigation from rental paid by a tenant preceding the C.E.L., Inc. lease. At the trial which followed the summary judgment decisions, it was shown that the appellant permitted C.E.L., Inc. to enter the premises from September 10, 1976, to the commencement of its lease on November 1, 1976, to prepare for its tenancy. A judgment was entered on appellant's behalf for rent from May 1, 1975, until October 31, 1976. The trial judge allowed defendants a set-off for rent during the preparatory period of September 10, 1976, through October 31, 1976, not because he considered this to be tantamount to surrender, but because plaintiff "divested the tenant of the use of the property for that period of time."

Appellant's complaint is presumably predicated upon a rather nebulous guideline. He argues that:

"During this time, C.E.L. made only minor renovations.",

and presumably concludes that if only minor renovations occur, divestiture cannot. That, of course, is a *non sequitur.* This is obviously a question of evidentiary sufficiency upon which we cannot say the trial judge was clearly erroneous. Md. Rule 1086.

Appellee also noted an appeal. Presumably, although not explicitly, he appealed from the money judgment entered for the amount of $8,400 on October 27, 1978, and from the summary judgment entered as to appellees' liability for rent from May 1, 1975, until October 31, 1976. Appellees have not supplied us with any argument or statement referring to their cross-appeal either in their brief as appellees or by separate

brief as cross-appellants. We will therefore dismiss it sua sponte. Md. Rule 1035 a 2, b 7.

Final judgment from which the appeal was taken was entered on November 2, 1978. Procedurally, however, the issues were concluded below step by step at hearings prior to the entry of judgment absolute. For purposes of clarifying our mandate, we will address each step in the order concluded prior to the judgment appealed from. On July 31, 1976, an order was filed:

1. Granting appellant's motion for summary judgment as to appellee's liability for rent from May 1, 1975 until October 31, 1976. The cross-appeal having been dismissed for the reasons noted, the order will stand in that regard; however,
2. the order also granted summary judgment to appellee for all time after November 1, 1976. That order was in error and judgment thereon will be reversed.

As noted, the October 27, 1978, hearing on damages from May 1, 1975, until October 31, 1976, was concluded by entry of judgment nisi in the amount of $8,400. For the reasons above set forth, so much of the judgment absolute related thereto will be affirmed.

It is apparent then, that that which we reverse and remand for retrial is only the summary judgment granted appellees on July 31, 1978, which decided "as a matter of law" that the parties had respectively surrendered and accepted surrender of the premises, thus terminating the original breached lease. That issue, as we have held, is a factual one and must be decided by the court (which in this case was also the factfinder) on the basis of the evidence presented.

*Judgment affirmed in part and reversed in part; case remanded for retrial pursuant to this opinion.*
*Cross-appeal dismissed.*
*Costs to be divided equally.*