**In re M.H.I., INC. t/a McIntire Hardware, Debtor.**

**Bankruptcy No. 85–A–2176.**

United States Bankruptcy Court,
D. Maryland
at Rockville.

April 7, 1986.

John Harman, Silver Spring, Md., for debtor in possession.

Lawrence Coppel, Baltimore, Md., for movant, Eastpoint Associates.

## MEMORANDUM OF DECISION

(Application for Payment of Post-Petition Rent—Eastpoint Associates)

PAUL MANNES, Bankruptcy Judge.

Eastpoint Associates seeks an order of this court directing the debtor in possession to pay post-petition rent pursuant to the provisions of 11 U.S.C. § 365(d)(3). The debtor in possession opposes the application. The case involves interpretation of § 365(d)(3), which was enacted as a part of the Bankruptcy Amendments and Federal Judgeship of 1984 (Pub.L. No. 98–353). That section provides:

§ 365 *Executory contracts and unexpired leases.*

(d)(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

The facts do not appear to be disputed. Bellwether Properties, a limited partnership, entered into lease negotiations with M.H.I., Inc., d/b/a McIntire Hardware ("MHI"), on June 18, 1985, which were concluded on or about August 23, 1985. The debtor in possession signed a lease for certain space in the Eastpoint Mall in Baltimore, Maryland. MHI accepted the keys to the premises on August 15, 1985. On or about October 10, 1985, an officer of the debtor in possession wrote the landlord that the debtor would not occupy the leased space and suggested that the landlord relet the space. MHI filed its Chapter 11 petition on October 29, 1985. The record reflects no reaction of the landlord to debt-

or's suggestion.[1] The debtor never occupied the property and on January 8, 1986, at the request of the landlord, MHI filed a motion seeking an order authorizing the rejection of the lease. Such an order was signed on January 13, 1986.

Eastpoint asserts that the recent addition to the Bankruptcy Code, § 365(d)(3), carries with it a mandatory direction to maintain lease payments until the lease is rejected.[2] In its reply to the motion, the debtor in possession, said to be relying on a statement in 2 Collier on Bankruptcy, ¶ 365.03[3] (15th Ed.1985) states that "it is the settled rule that until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the premises." MHI argues that it would therefore follow in this particular case that since the premises were unoccupied, the "reasonable" value was minimal, citing *Matter of McCrory Stores Corp.*, 69 F.2d 517 (2d Cir.1934); *Matter of United Cigar Stores Co. of America*, 69 F.2d 513 (2d Cir.1934), *cert. denied* 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934); *Central Manhattan Properties, Inc. v. D. A. Schulte, Inc. of New York*, 91 F.2d 728 (2d Cir.1937). Unfortunately for MHI, the 1984 revisions of § 365(d)(3) change prior law.

Let us now look at the legislative history. The provision in question is part of the shopping center amendments and, unlike other parts of the 1984 changes, there is a substantial legislative history. *See generally, In re By-Rite Distributing, Inc.*, 47 B.R. 660, 664–65 (BC Utah 1985), *rev'd on other grounds*, 55 B.R. 740 (D.Utah 1985).

Besides the statutory language being as clear as it is, one is further assured by the legislative history showing that Congress meant exactly what it said, that the trustee was to perform all of the debtor's obligations until rejection of the lease. In the conference report that appears in the *Congressional Record*, 130 Cong.Rec. S8894–8895 (daily ed. June 29, 1984), it is stated:

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area and other charges on time pending the trustee's assumption or rejection of the lease.

The legislation reflects the successful efforts of the shopping center industry which were discussed at length in Senate Report No. 97–527, that accompanied S. 2297, The Shopping Center Protections Improvement Act of 1982. While the shopping center industry was unsuccessful in the 97th Congress, it succeeded in the 98th Congress in its goal to spread to all creditors the burden previously carried by it alone. *See In re Galvan*, 57 B.R. 732 (Cal.1986).

Other courts have reached a similar conclusion. As was pointed out by the United States Bankruptcy Court for the District of Delaware, "any obligation covered by the first sentence of § 365(d)(3) is allowed as

---

1. Under Maryland law, the landlord has no duty to mitigate damages following the tenant's abandonment of leased premises. *Eidelman v. Walker & Dunlop, Inc.*, 265 Md. 538, 290 A.2d 780, 783 (Md.1972). Maryland law also requires that the landlord assent to the surrender

of the premises. *Eidelman*, 290 A.2d at 783–84.

2. The parties agree that if the landlord's claim is upheld, the amount owing is $15,073.68.

an administrative expense without the necessity for notice and hearing if no objection has been filed to the request/claim for payment." *In the matter of The Barrister of Delaware, Ltd.,* 49 B.R. 446, 447 (BC Del.1985). *See also, Feld v. S & F Concession, Inc. et al. (In re S & F Concession, Inc.),* 13 BCD 1119, 55 B.R. 689, 690–91, 13 CBC 2d 1454, (BC E.D.Pa.1985)).

The court finds, both from the unequivocal language of the statute and the legislative history described above, that § 365(d)(3) "was added to provide specific protection for the lessor of non-residental real property during the post-petition hiatus period while the Trustee or Debtor decides what to do with the executory lease." *See generally,* Dawson, *Recent Bankruptcy Law Developments Regarding Executory Contracts, Proceedings* 59th Annual Meeting of the National Conference of Bankruptcy Judges, page 3–4. In response to an active and effective lobbying effort, the landlord has had much of the burden removed from its back and spread among the rest of the creditor body. The message of Congress is unmistakable.

An order will be entered granting the relief sought.