**In re SULLIVAN MACHINERY COMPANY, Debtor.**

**JOY TECHNOLOGIES, INC., Movant,**

v.

**SULLIVAN MACHINERY COMPANY, Respondent.**

Bankruptcy No. 5–86–00763.

United States Bankruptcy Court, D. Connecticut.

Nov. 18, 1987.

Thomas M. Zwilling, Strassburger McKenna Gutnick & Potter, Pittsburgh, Pa., Arnold J. Bai, Brian Smith, Bai, Pollock & Dunnigan, Bridgeport, Conn., for Joy Technologies, Inc.

Warren R. Graham, Anderson Russell Kill & Olick, P.C., New York City, Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, Conn., for Sullivan Machinery Co.

Douglas Strauss, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Official Committee of Unsecured Creditors.

Susan Roman, Robinson & Cole, Hartford, Conn., for Mellon Bank, N.A.

**MEMORANDUM OF DECISION AND ORDER ON MOTION FOR PAYMENT OF POST PETITION EXPENSE AND SURRENDER OF LEASED PREMISES**

ALAN H.W. SHIFF, Bankruptcy Judge.

Joy Technologies, Inc. ("Joy") seeks an order requiring the debtor, Sullivan Machinery Company ("Sullivan"), to immediately vacate a manufacturing plant leased by Joy to Sullivan, promptly pay rent until the property is vacated, and perform other obligations under a sublease. The relief sought requires an examination of Code subsections 365(d)(3) and (4). The relevant facts in this controversy are essentially undisputed and follow.

**I.**

In March 1984, Sullivan purchased certain assets from Joy. At the time of that acquisition, Sullivan and Joy entered into a sublease of a manufacturing plant located in Wilson, North Carolina.[1] Sullivan designs, manufactures and sells portable air

1. Joy Exhibit A.

compressors, rock drilling equipment and spare parts for both products. Approximately 50% of its revenue is earned from the sale of compressors which are primarily manufactured in the Wilson plant. Sullivan also has a manufacturing facility in Clairmont, New Hampshire.

On November 10, 1986, Sullivan filed for relief under chapter 11 of the Bankruptcy Code. Thereafter, Sullivan sought and obtained extensions of time within which to assume or reject the sublease. The last such extension, which was granted by a May 15, 1987 order, entered upon the stipulation of Joy and Sullivan and extended the time to May 29, 1987. The stipulation and order further provided that "[s]uch extension is agreed and consented to without prejudice to the right of the Debtor to seek additional extensions of the Assumption Period, and without prejudice to the right of Joy to contest any such extension."

On May 27, 1987, the parties entered into another stipulation which was read in open court on that date and thereafter proposed as an "Order of Court Authorizing Rejection of Sublease" ["Stipulation"].[2] The Stipulation, which is in all material respects identical to the version recited in open court, was not filed, and an order based on its provisions did not enter. The parties, however, have agreed during this proceeding that the Stipulation had the effect of a rejection of the sublease as of August 31, 1987. The Stipulation further provided:

> c. Sullivan Machinery Company shall be responsible for all rent, expenses, charges and other costs imposed by the Sublease through August 31, 1987. Any charges, such as taxes paid on an annual basis shall be prorated between the parties on the basis of eight (8) months being charged to Sullivan Machinery Company for 1987 and four (4) months charged to Joy Manufacturing Company for 1987;

> d. The base rental imposed by the Sublease shall be paid when due by Sullivan Machinery Company to Joy Manufacturing Company, in addition, on August 31, 1987, Sullivan Machinery Company shall pay to Joy Manufacturing Company an amount equal to one-third (⅓) of the semi-annual rental payment due on December 31, 1987 for the occupancy during July and August, 1987;

> e. After rejection on August 31, 1987, Sullivan Machinery Company shall be permitted to use the bonderizer located in the Wilson Plant through November 30, 1987. Joy Manufacturing Company and Sullivan Machinery Company shall meet and mutually negotiate terms acceptable to both sides for access to and use of the bonderizer, by Sullivan Machinery Company including expenses incurred in its use by July 31, 1987. If not agreed to by July 31, 1987, either party may motion the Court to hold an expedited hearing regarding the terms for access to and use of the bonderizer by Sullivan Machinery Company, which terms and use shall be established by the Court.

## II.

Joy relies upon Code subsection 365(d)(3) and this court's January 27, 1987 order to assert its claim that Sullivan is required to pay rent and taxes and to reimburse Joy for the payment of an insurance premium under the sublease until it was rejected on August 31, 1987. Joy also seeks an order under § 503(b)(1)(A),[3] requiring Sullivan to pay for the use and occupancy and other expenses of the Wilson plant from the rejection date until Sullivan vacates the premises. In addition, Joy asks that Sullivan be

---

2. Joy's Exhibit F.

3. § 503(b)(1)(A) provides as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

required to account for, return, and install, where applicable, all of Joy's machinery and equipment wrongfully removed by Sullivan from the Wilson plant to its Clairmont facility. Finally, Joy argues that it is entitled to immediate possession of the Wilson plant under subsection 365(d)(4).

Sullivan does not dispute the amounts claimed by Joy for post petition, pre-rejection rent, taxes or insurance; post rejection expenses, including use and occupancy,[4] taxes, and insurance; or that it must return and reinstall equipment removed in violation of the sublease. Sullivan does, however, argue that section 365(d)(3) is inapplicable and that Joy is just another administrative claimant to be paid if and when other administrative expenses are paid. Sullivan similarly does not dispute that it must vacate the Wilson plant but argues, with the support of the creditors' committee, that (d)(4) is inapplicable and that it should be permitted to remain in the Wilson plant until a bonderizing machine is purchased and installed in its Clairmont facility. On October 29, 1987, the last day of the hearing in this matter, Sullivan requested 75 additional days.

## III.

### a.

### Payment of Postpetition Expenses Under Lease 11 U.S.C. §§ 365(d)(3), 503(b)(1)(A)

Sullivan argues that § 365(d)(3) is inapplicable as to its postpetition, pre-rejection obligations because "that subsection speaks of obligations that arise within sixty (60) days after the Order for Relief."[5] That argument cannot be supported by the clear text of (d)(3).

Subsection (d)(3) provides in relevant part:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresiden-

tial real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

■ Contrary to Sullivan's assertions, the second sentence of (d)(3) does not modify the first by restricting its scope to those lease obligations that arise within the first 60 postpetition days. The second sentence merely gives the court the discretion of extending the time for performance of those obligations provided that they are performed within that 60 day period. As other courts have observed, Congress intended (d)(3) to be applied precisely as it was written. *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882–83 (Bankr. E.D.N.Y.1986); *In re M.H.I., Inc.*, 61 B.R. 69, 71 (Bankr.D.M.D.1986), *In the Matter of The Barrister of Delaware, Ltd.*, 49 B.R. 446, 447 (Bankr.D.Del.1985).

■ Sullivan's position is also inconsistent with the Stipulation it entered into less than six months ago. As noted, paragraphs c and d require Sullivan to pay base rent in a timely manner. Now Sullivan urges this court to utilize its equity powers to relieve it of that obligation.

Although it is widely held that a bankruptcy court has broad equitable powers which may be invoked so that "substance will not give way to form [and] technical considerations will not prevent substantial justice from being done," *Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939), judicial disregard for a stipulation bargained for by the parties and recited in open court hardly fits within that concept, particularly where, as here, the Stipulation is in accord with the legislative mandate of (d)(3). This court will not permit Sullivan to disavow its agreement with Joy. *See U.S. of America v. New England*

---

**4.** In its closing argument, Joy claimed entitlement to the fair value of the use and occupancy of the premises from the date of rejection. Sullivan did not oppose that claim or offer evidence of the measure of that value. The sub-

lease rate is therefore adopted. *See, Farber v. Wards Co., Inc.*, 825 F.2d 684, 689 (2d Cir.1987).

**5.** Sullivan's Opposition Brief dated October 27, 1987 at p. 6.

*Teamsters and Trucking Industries Pension Fund,* 737 F.2d 1274, 1278 (2nd Cir. 1984); *Greenspahn v. Joseph E. Seagram & Sons,* 186 F.2d 616 (2nd Cir.1951).

### b.

### Surrender Lease Premises 11 U.S.C. § 365(d)(4)

■ Joy argues that § 365(d)(4) requires Sullivan to surrender the Wilson plant immediately upon rejection of the lease. I disagree. Subsection (d)(4) provides:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Since the lease was not rejected as a matter of law but rather in accordance with the Stipulation, (d)(4) is inapplicable. The question therefore evolves, when should Sullivan be required to surrender the premises?

Sullivan again resorts to the equitable powers of this court and with creditors' committee support argues that on a balancing of harm analysis, the benefits of its continued occupancy far out-weigh any detriment to Joy. In support of that contention, Sullivan offered evidence in an attempt to prove that unless it is permitted to remain in the Wilson plant until its bonderizer is functional in the Clairmont facility, it will be forced to liquidate. But allowing Sullivan to remain there would purportedly enable the company to fill approximately 500 current orders and continue with its reorganization efforts, which, if successful, would provide a substantial dividend to unsecured creditors who would otherwise receive none. Sullivan also argues that remaining on the premises an additional 75 days will cause Joy no inconvenience or disadvantage since Sullivan only occupies 5–7% of the floor space and Joy may market the entire property and occupy or lease the remainder.

Joy attempts to buttress its demand for immediate possession with the argument that it has its own economic problems and must generate cash in order to strengthen its working capital position but that its ability to market the Wilson plant is hampered by Sullivan's occupancy. In addition, Joy challenges the underpinning of Sullivan's argument with the assertion that Sullivan's prospect for reorganization is more fanciful than real. As recounted by Joy, Sullivan's lender, Mellon Bank, is owed approximately $17,000,000 and its trade creditors and Joy each have unsecured claims of approximately $10,000,000. It is estimated that the liquidation value of Sullivan's assets is $8,000,000. In the context of that economic setting, Joy claims that Sullivan's purported effort to attract a cash investment of $5,000,000 to $15,000,000 is unlikely to succeed, but even if it does, there would still be no distribution to unsecured creditors unless Mellon agreed to defer some of its distribution under a plan of reorganization. Joy argues that none of the elements of that scenerio have better than a remote chance of occurring. Joy further argues that since Sullivan has breached the stipulation with respect to timely performance of obligations under the sublease in violation of § 365(d)(3) and the Stipulation, this court should order Sullivan to vacate the Wilson plant immediately.

Even if the court were to apply a balancing of harm analysis, as Sullivan urges, Sullivan would not be entitled to the relief it seeks. The thrust of Sullivan's argument is that it knows what is best for Joy and the other creditors, and that if it is given the additional time in the Wilson plant, it will be able to continue its efforts to reorganize. Sullivan's argument overlooks the testimony of its Chief Executive Officer that the bonderizer could be completed in early December, and that Sullivan is not bound by a specific delivery date for the work orders in progress, which customarily enjoy a 30–40 day "slack time".

In order to apply a balance of harm analysis, however, it must first appear that the Stipulation which provides for a time limit on Sullivan's use of the bonderizer should not be enforced. As noted, courts

should not disturb a stipulation unless one of the parties can show that it will suffer substantial injustice without relief from its obligations and that the other parties can be restored to the same position they would have had if no agreement had been made. *Greenspahn v. Joseph E. Seagram & Sons, supra,* 186 F.2d 616, 620; *U.S. New England Teamsters and Trucking Industries Pension Plan, supra,* 737 F.2d 1274, 1278 (A party to a stipulation is not entitled to withdraw from its agreement unilaterally).

The evidence in this proceeding demonstrates that the stipulated time limitation on Sullivan's use of the bonderizer was established by a compromise. Sullivan now appears to be taking the anomolous position that it will suffer manifest injustice if it isn't given relief from the Stipulation despite the fact that it is the very existence of that Stipulation which prevents the immediate termination of Sullivan's right to remain at the Wilson plant under (d)(4). Sullivan's reliance upon but attempted repudiation of the Stipulation is hardly a sufficient basis for it to appeal to this court's equity powers. I decline to relieve Sullivan of its obligations under the Stipulation.

As noted in paragraph e of the Stipulation, Sullivan "shall be permitted to use the bonderizer located in the Wilson Plant through November 30, 1987." Because Sullivan is allowed to use the machine up to and including the 30th, a period of time must be provided for Sullivan to vacate the premises after that date. The Stipulation is silent in that regard. The court must therefore fix the amount of time that is reasonable under all of the circumstances as established by the evidence. Having in mind that Sullivan has work in progress, inventory, tools, equipment, and office supplies, Sullivan is given 15 days after the end of its permitted use of the bonderizer to vacate the Wilson plant.

## IV

For the foregoing reasons I conclude that

(1) all post petition, pre-rejection rent, taxes, and insurance obligations under the sublease must be paid within 30 days of the date of this order, *see* § 365(d)(3);

(2) post rejection use and occupancy is allowed as an administrative expense under § 503(b)(1)(A) at the rate of $29,218.75 per month to be paid at the time of and in the same proportion as other administrative expenses;

(3) on or before December 14, 1987, Sullivan is to return and, where applicable, reinstall all equipment removed in violation of the sublease from the Wilson plant to the Clairmont facility unless Joy and Sullivan otherwise agree in writing, and

(4) Sullivan is to completely vacate the Wilson plant on or before December 15, 1987, and

IT IS SO ORDERED.